SILKERT, Appellant,

v.

OHIO DEPARTMENT OF JOB & FAMILY SERVICES et al., Appellees.

[Cite as *Silkert v. Ohio Dept. of Job & Family Servs.,*
184 Ohio App.3d 78, 2009-Ohio-4399.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22936.

Decided Aug. 28, 2009.

John E. Lenehan, for appellant.

Richard Cordray, Attorney General, and Robin A. Jarvis, Assistant Attorney General, for appellees.

FAIN, Judge.

{¶ 1} Plaintiff-appellant Jovon Silkert appeals from a judgment of the trial court affirming a decision of the Unemployment Compensation Review Commission that Silkert is not entitled to unemployment compensation.[1] Silkert contends that the trial court erred in failing to find that the commission's decision was against the manifest weight of the evidence. Silkert further contends that the trial court should have found that the commission's decision was unlawful or unreasonable. Finally, Silkert contends that the trial court erred in failing to find that the commission's decision deprived Silkert of rights under the United States and Ohio Constitutions.

{¶ 2} We conclude that in an administrative review of the eligibility of a discharged employee for unemployment compensation, the burden of persuasion remains at all times upon the discharged employee to demonstrate that he was

---

1. The defendant-appellee in this appeal is the Director, Ohio Department of Jobs and Family Services ("ODJFS").

discharged without just cause. But where the existence of just cause depends upon a positive drug test for marijuana, the facts governing the reliability of the test are peculiarly within the knowledge of the employer, and the discharged employee presents some evidence to impeach the reliability of the test—in this case, his testimony that he had never used marijuana—the employer has a burden of coming forward with some evidence to show that the test administered is reliable. In the administrative hearing in this matter, no burden was imposed upon Silkert's employer to come forward with any evidence to demonstrate the reliability of the test, after Silkert had offered some evidence to impeach the reliability of the test. This deprived Silkert of a fair hearing on the issue of his eligibility for unemployment compensation, in violation of his due process rights. Accordingly, the judgment of the trial court is reversed, and we remand this cause to the trial court with instructions to remand this matter to the commission for further proceedings consistent with this opinion.

I

{¶ 3} Aaron Rents operates a sales and lease business for retail operations. In November 2004, the company hired Jovon Silkert as a manager in training, at its Jacksonville, Florida location. During his employment, Silkert received various promotions, had good evaluations, and had no disciplinary problems. Silkert eventually transferred to a store in Middletown, Ohio, and was subsequently promoted to manager of the Beechmont, Ohio store in early January 2007.

{¶ 4} Because the Beechmont store is located only about ten miles from the Kentucky border, all employees at that store, including the manager, are required to be certified by the United States Department of Transportation ("DOT"). Ohio does not require DOT certification, but Kentucky does. Part of the DOT certification is a physical, which includes a drug test.

{¶ 5} Aaron Rents has a company policy on drugs, which is in the policy manual that all employees sign. The policy provides:

{¶ 6} "Any associate who consumes alcohol, marijuana, or any other dangerous drug during working hours or reports for work after having used or consumed alcohol, marijuana or other dangerous drugs will be subject to immediate dismissal.

{¶ 7} "Aaron Rents, Inc. Is committed to providing a safe, productive work environment for its associates while providing safe, quality services for its customers and the general public. Being under the influence of drugs or alcohol on the job poses serious safety and health risks not only to the user but also to all who work or come in contact with him/her. Additionally, the possession, sale or use of drugs or alcohol in the workplace poses unacceptable risk for safe and

efficient operations and exposes the Company's reputation with its customers, suppliers and the communities within which it operates to potential damage.

{¶ 8} "In support of this commitment, Aaron Rents, Inc. has developed the following drug/alcohol policy and testing program.

{¶ 9} "1. *EMPLOYMENT* : All applicants for employment are required to take and pass a post offer drug test. An applicant who refuses to submit to or who does not pass the test will not be considered for employment. All personnel who will be operating a Company vehicle will be tested in accordance with applicable U.S. Department of Transportation (DOT) testing procedures. All other personnel will be tested using a NIDA five-panel screen.

{¶ 10} "2. RANDOM: All associates are subject to testing at any time on a random basis as a term and condition of continued employment.

{¶ 11} " * * *

{¶ 12} *"Any associate covered by this policy who test [sic] positive for the use of drug and/or alcohol or refuses to submit to a test required by this policy will be subject to disciplinary action to include immediate dismissal."* (Emphasis added.)

{¶ 13} Silkert testified in a commission hearing that he had received a copy of the drug and alcohol policy as part of the operations-manager manual in each store. Silkert also indicated that he was familiar with the policy, because he was involved in the hiring process. Silkert stated that when he assumed the manager's position at the Beechmont store, he was not aware that he would have to take a physical. About two or three weeks later, Shane Andrews, the regional manager, told Silkert that he would have to take a physical. Silkert assumed that there would be a drug test, because the physical was for DOT.

{¶ 14} Silkert took the drug test in early February 2007, and learned several days later that he had tested positive for marijuana. The drug-screen certificate states that the test type is "Non–DOT."

{¶ 15} Silkert testified that he did not use marijuana while working for Aaron Rents. When Silkert asked the medical review officer for the drug-screening company about contesting the result, he was told to contact his employer. He was not told that he had a right to a split-sample retest. He asked for a copy of the procedure used in the test, but was only provided with a copy of the result, not the procedure followed. When Aaron Rents learned of the test result, Silkert was terminated from employment the same day. Andrews indicated that the company has a drug-free environment policy and that employees are automatically terminated whenever they test positive for drugs.

{¶ 16} After he was discharged, Silkert spoke with the regional vice-president, Michael Ryan, to ask how to contest the results. Ryan stated that Aaron Rents did not have a policy on contesting results, and that the only way Silkert could reverse the termination would be to invalidate the test. Ryan indicated that Silkert would have to take that up with the test company.

{¶ 17} When Silkert applied for unemployment compensation, his claim was initially approved, due to Aaron Rents' failure to provide information about the test results. Aaron Rents appealed the decision, and a hearing was held by a hearing officer for the commission. In late October 2007, the officer issued a decision reversing the allowance of benefits. The officer concluded that Silkert had been discharged for just cause, because he was required to take a drug test, and failed. Aaron Rents, therefore, was justified in terminating Silkert's employment, pursuant to company rules.

{¶ 18} Silkert requested reconsideration of the decision, but his request was denied. Silkert then appealed to the common pleas court, which affirmed the commission's decision. The common pleas court concluded that even if the drug screen was not conducted in accordance with DOT regulations, company policy states that any employee who uses marijuana and reports to work will be subject to immediate dismissal. The court further concluded that an ordinarily intelligent employee of a company with this policy would expect to be discharged from employment following a positive drug test.

{¶ 19} Silkert appeals from the judgment of the trial court.

## II

{¶ 20} Silkert's assignments of error are as follows:

{¶ 21} "The Montgomery County Common Pleas Court erred in finding that the decision of the Unemployment Compensation Review Board was not against the manifest weight of the evidence.

{¶ 22} "The Montgomery County Common Pleas Court erred in finding that the decision of the Unemployment Compensation Commission was not unlawful.

{¶ 23} "The Montgomery County Common Pleas Court erred in finding that the decision of the Unemployment Compensation Commission was not unreasonable.

{¶ 24} "The Montgomery County Common Pleas Court erred in finding that the decision of the Unemployment Compensation Review Commission was not a deprivation of rights under the U.S. and Ohio Constitutions."

{¶ 25} Silkert contends that the decision of the commission is against the manifest weight of the evidence, because the drug test was not administered in

accordance with DOT requirements, which require a split or separate specimen to be taken that can be independently tested. Silkert additionally contends that he was not informed, as required by law, of his right to request a test of the split specimen, and was not given copies of the testing process administration. Finally, Silkert contends that the commission improperly ignored his testimony that he had not used drugs.

{¶ 26} Our standard of review in unemployment compensation appeals is very limited. *Giles v. F & P Am. Mfg., Inc.,* Miami App. No. 2004–CA–36, 2005-Ohio-4833, 2005 WL 2243825, at ¶ 13. We may reverse the commission's just-cause determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207. All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and cannot make factual findings or determine witness credibility. Id. However, these courts "do have the duty to determine whether the board's decision is supported by the evidence in the record." Id.

{¶ 27} Claimants are not eligible for benefits if they are discharged for just cause in connection with their work. R.C. 4141.29(D)(2)(a). Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. *Irvine v. State Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 482 N.E.2d 587.

{¶ 28} As the trial court observed, an ordinarily intelligent person would understand that his or her employment may be terminated for violation of an employer's drug policy. As the Supreme Court of Ohio noted in *Tzangas,* "[t]he Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. * * * Thus, fault is essential to the unique chemistry of a just cause termination." 73 Ohio St.3d at 697–698, 653 N.E.2d 1207.

{¶ 29} Silkert argues that he was not discharged for just cause, because Aaron Rents failed to comply with its own policy, which requires drug testing in compliance with DOT testing procedures for persons operating company vehicles. However, the commission's function is to determine whether benefits should be granted under R.C. 4141.29, not whether a contract has been breached. *Wilson v. Matlack, Inc.* (2000), 141 Ohio App.3d 95, 102, 750 N.E.2d 170.

{¶ 30} In its brief, ODJFS cites *Connolly v. Dir., Ohio Dept. Job & Family Servs.* (Mar. 14, 2002), Mahoning App. No. 01 CA 75, 2002 WL 417907. In

*Connolly*, an employee was randomly tested for drugs and tested positive for cannabinoids. The employee argued that the test could not be admitted into evidence, because the manifest weight of the evidence indicated that the testing facility failed to comply with DOT regulations on testing. The employer had testified that the facility had complied with DOT procedures, but the employee noted that no chain-of-custody form existed, that the employer did not know the testing procedures, and that he (the employee) had not been forced to do things that the regulations require. The Seventh District Court of Appeals rejected the employee's argument, noting:

{¶ 31} "[I]t is the Commission's responsibility to determine the credibility of the witnesses. We may not re-weigh that evidence. * * * Likewise, any breaks in the chain of custody go to the weight of the evidence, not its admissibility. * * * Connolly is asking us to do exactly what we cannot do, examine the credibility of the witnesses and re-weigh the evidence. As unfortunate as it may seem to Connolly, the Commission chose to believe the employer's testimony that the testing facility followed the USDOT guidelines. Therefore, it had no reason to question the reliability of the test results. Accordingly, the commission found the medication Connolly took could not have produced a false positive since the testing facility used a gas chromatography/mass spectrometry analysis, and found Connolly's discharge to be with just cause. For these reasons, the Commission's decision was not against the manifest weight of the evidence." Id. at *3.

{¶ 32} In the case before us, the regional manager of Aaron Rents testified that he was "sure it [the drug screen] was all coordinated with the * * * DOT," but he acknowledged that he was "not familiar with their procedures." For his part, Silkert put the reliability of the drug test into issue when he testified that he had never consumed marijuana in any form. (The medical-review officer at the testing firm, when Silkert disputed the validity of the test result, suggested to Silkert that he might inadvertently have ingested marijuana as an ingredient in food at a party, but that was offered by her as a possible explanation for a positive result, not by Silkert.)

{¶ 33} A claimant is entitled to procedural due process in connection with an unemployment-compensation hearing:

{¶ 34} "[F]ederal law mandates that state unemployment programs provide an '[o]pportunity for a fair hearing, before an impartial tribunal * * *.' Section 503(a)(3), Title 42, U.S.Code. This statute has been interpreted to impose requirements which are the same as constitutional procedural due process requirements. * * * Hence, any judicial analysis of the state's hearing procedures in this case must be conducted with a fundamental recognition that under the Fourteenth Amendment the cornerstone of due process, in the procedural

sense, is the opportunity for a fair hearing." *Henize v. Giles* (1986), 22 Ohio St.3d 213, 215, 22 OBR 364, 490 N.E.2d 585.

{¶ 35} We recognize that the Ohio Rules of Evidence do not apply to administrative proceedings, but principles of evidence do cast some light on the minimum requirements for a fair hearing.

{¶ 36} In an unemployment-compensation proceeding, the burden of persuasion remains always upon the discharged employee to prove that he is entitled to unemployment compensation. But the burden of proof of the case, generally, must sometimes be distinguished from the burden of proof of some single fact, and the burden of proof as to any particular fact lies on the person who wishes the court to believe in its existence, unless the law provides otherwise. *Valley Ry. Co. v. Roos* (1893), 2 Ohio Dec. 91, 6 Ohio C.D. 33, 1893 WL 320, affirmed without opinion, 54 Ohio St. 668, 47 N.E. 1115, cited in Ohio Jurisprudence 3d, Evidence, Section 85. This is especially the case where the subject matter of a negative averment lies peculiarly within the knowledge of the other party—that other party has the burden of proving the fact. Ohio Jurisprudence 3d, Evidence, Section 88.

{¶ 37} In the case before us, the general issue is whether Aaron Rents had just cause to discharge Silkert. Upon that issue, Silkert had the burden of proving that he was discharged without just cause. But Aaron Rents' assertion of just cause depended entirely upon the positive marijuana test result. Aaron Rents admitted that it had no other cause to discharge Silkert.

{¶ 38} Silkert offered his own testimony that he had not used marijuana while employed at Aaron Rents as a negative averment concerning the reliability of the test. Especially in view of the fact that Silkert had attempted to obtain from the testing company an explanation of the procedure it used to test his urine sample for marijuana, and was rebuffed, fundamental fairness required that Aaron Rents come forward with some evidence of the test's reliability, after Silkert had placed its reliability into issue. Once Silkert testified that he had not used marijuana while employed at Aaron Rents, the reliability of the test could no longer simply be assumed, but had to be supported by some prima facie evidence, at least, of the test's reliability. Once some prima facie evidence of the test's reliability had been presented, the burden of persuasion on this issue would be upon Silkert, to prove to the satisfaction of the fact-finder that the test was unreliable.

{¶ 39} This appears to be consistent with at least one decision of the Unemployment Compensation Board of Review, *In re Gordon,* UCBR B91–01601–0000(1–15–92). In that case, a bus driver employed by the Cleveland City Board of Education was discharged under a policy that prohibited drivers from being "under the slightest influence of intoxicants, narcotics, alcohol, amphetamines, or

any derivative thereof *or have any traces of such items in his body* or have the odor of intoxicants on his breath." (Emphasis added.) The policy went on to state, "An employee evidenced by medical tests to be in violation [is] subject to immediate discharge from employment." The employee had tested positive for carboxy T.H.C., a metabolite of marijuana, "confirmed by gas chromatography mass spectroscopy as being equal or greater than 15 ng/ml." The driver contended that he did not engage in the use of marijuana on any occasion.

{¶ 40} The problem in *In re Gordon* was that there had been no evidence to establish the chain of custody of the drug test evidence, making the test unreliable. The Board of Review observed: "Although given an additional opportunity to present evidence concerning sample collection, including questions concerning observation of the individual, sample amount and documentation procedures as well as evidence on the reliability and certification of the testing facility, no individual appeared who could give testimony to insure that the sample collection, documentation, and testing procedures were reliable." The Board of Review held: "Some evidence is necessary in order to establish that test results are reliable before the Board of Review can give greater weight to that evidence than sworn testimony. The greater weight of the evidence before the Board of Review establishes that the claimant did not use marijuana at any time."

{¶ 41} We conclude that by assuming the reliability of the drug-test result, after Silkert had presented some evidence of its unreliability, and without any affirmative evidence of its reliability, the Unemployment Compensation Review Commission deprived Silkert of the fair hearing to which he was entitled. Therefore, the trial court ought to have reversed the decision of the commission and remanded the matter to the commission for a fair hearing, in accordance with R.C. 4141.282(H). Under App.R. 12(B), our judgment on appeal may render the judgment or final order that the trial court should have rendered, or remand the cause to the trial court with instructions to do so. Therefore, in this case, we will remand this cause to the trial court with instructions to remand this matter to the Unemployment Compensation Review Commission for further proceedings consistent with this opinion.

{¶ 42} Silkert's second and fourth assignments of error are sustained to the extent indicated, rendering his first and third assignments of error moot.

### III

{¶ 43} Silkert's second and fourth assignments of error having been sustained to the extent indicated in Part II, above, and his first and third assignments of error having been overruled as moot, the judgment of the trial court affirming the decision of the Unemployment Compensation Review Commission is reversed,

and this cause is remanded to the trial court with instructions to remand this matter to the commission for further proceedings consistent with this opinion.

Judgment accordingly.

FROELICH and HARSHA, JJ., concur.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting by assignment.