BATES, Appellee,

v.

AIRBORNE EXPRESS, INC., et al., Appellants.

[Cite as *Bates v. Airborne Express, Inc.*, 186 Ohio App.3d 506, 2010-Ohio-741.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2009 CA 37.

Decided Feb. 26, 2010.

Danielle Bates, for appellee.

Andrew M. Kaplan and Angela J. Rapp, for appellants.

Froelich, Judge.

{¶ 1} This matter is before the court on the direct appeal of defendant-appellant Airborne Express, Inc. ("ABX") from a trial court judgment concluding that plaintiff-appellee, Danielle Bates, was entitled to receive unemployment benefits because she had not been terminated for just cause. For the following reasons, the judgment of the trial court is affirmed.

I

{¶ 2} Bates began working as a customer-service agent for ABX on February 14, 2005. On July 28, 2006, Bates injured her back while working. She filed a claim with the Bureau of Workers' Compensation, which was allowed for a thoracic sprain. As a result of the injury, Bates was placed in ABX's alternate-

duty program. After several absences due to back pain, ABX concluded that Bates had violated the company's attendance policy, and the company terminated her employment on November 30, 2006.

{¶ 3} Bates filed an application for unemployment benefits with the Ohio Department of Jobs and Family Services ("ODJFS"); that application was denied. She appealed the denial of benefits, and the ODJFS affirmed its determination. The claim was transferred to the Unemployment Compensation Review Commission, and a hearing was held on August 28, 2007. The hearing officer affirmed the denial of unemployment benefits, finding that ABX had terminated Bates for just cause.

{¶ 4} Bates filed a notice of appeal in the Greene County Court of Common Pleas. On April 10, 2009, the trial court reversed the determination of the review commission and ordered payment of unemployment benefits to Bates. ABX appeals.

## II

{¶ 5} ABX's assignment of error is as follows:

{¶ 6} "The trial court exceeded the proper scope of review by substituting its own judgment when the review commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence."

{¶ 7} In its sole assignment of error, ABX maintains that the review commission's determination that Bates was terminated for just cause was not unlawful, unreasonable, or against the manifest weight of the evidence. ABX further contends that the trial court impermissibly substituted its own judgment for the review commission's, when the trial court concluded that Bates was not terminated for just cause. We disagree with both positions.

{¶ 8} The scope of our review in unemployment-compensation appeals is quite limited. *Silkert v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶ 26, citing *Giles v. F. & P. Am. Mfg., Inc.*, Miami App. No. 2004–CA–36, 2005-Ohio-4833, 2005 WL 2243825, ¶ 13. "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph one of the syllabus. "All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and cannot make factual findings or determine witness credibility. * * * However, these courts 'do have the duty to determine whether the board's decision is supported by evidence in the record.'" *Silkert* at ¶ 26, quoting *Tzangas* at 696, 653 N.E.2d 1207.

{¶ 9} R.C. 4141.29 establishes the requirements for eligibility for unemployment benefits. Relevant to this case, a claimant is not eligible for benefits if she is discharged for "just cause." R.C. 4141.29(D)(2)(a). The narrow issue before us is whether ABX terminated Bates for just cause. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 482 N.E.2d 587. We keep in mind that the unemployment-compensation statutes must be liberally construed in favor of awarding benefits to the applicant. *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin,* Clark App. No. 2006–CA–32, 2007-Ohio-1674, 2007 WL 1054033, ¶ 10, citing R.C. 4141.46, *Ashwell v. Ohio Dept. of Jobs & Family Serv.,* Montgomery App. No. 20552, 2005-Ohio-1928, 2005 WL 940901, ¶ 43.

{¶ 10} "In an unemployment compensation proceeding, the burden of persuasion remains always upon the discharged employee to prove that he is entitled to unemployment compensation. But the burden of proof of the case, generally, must sometimes be distinguished from the burden of proof of some single fact, and the burden of proof as to any particular fact lies on the person who wishes the court to believe in its existence, unless the law provides otherwise." (Citation omitted.) *Silkert* at ¶ 36.

{¶ 11} When Bates began her employment with ABX, she was provided with a copy of the company's attendance policy. Pursuant to that policy, when an employee accumulates seven absence "occurrences" within a 12–month period, she is given a written warning. After an eighth "occurrence," she receives a final written warning, and following a ninth "occurrence" within that 12–month period, ABX terminates the employee. The attendance policy defines an "occurrence" as any period of two or more hours away from work. The general policy provides that "[c]onsecutive days of absence attributable to a single illness will be considered one occurrence. Non-consecutive occurrences for the same medical reason may be combined if the subsequent absence is within five (5) calendar days of the last day of the original absence." That policy also states that "Certified Worker's Compensation Leave are not counted as occurrences for the purpose of this policy." When Bates was placed on alternate duty, she was provided with an "Alternate Duty Checklist" which stated, "You are accountable for your attendance under the Company's attendance policy while in Alternate–Duty. Absences related to your original condition requiring Alternate Duty will only be combined as one (1) occurrence if medical treatment is obtained and the proper medical documentation is provided to the Alternate Duty Supervisor for the absence."

{¶ 12} Prior to her back injury, Bates had accumulated four absence "occurrences" (November 16, 2005, March 1 through 3, 2006, April 19, 2006, and May 17, 2006). Neither party disputes the legitimacy of those four "occurrences." Relevant to the instant appeal, Bates missed work due to back pain on August 30, September 21, September 28, October 24 and 25, and November 2, 2006. She also missed work on the night of November 28, 2006, in anticipation of an independent medical exam that ABX had scheduled for the morning of November 29.

{¶ 13} ABX's representative Judy Branham, who is the workers' compensation coordinator, testified that she charged the dates from August 30 through November 2, 2006, against Bates as separate "occurrences" for three reasons. First, Branham insisted that the doctor's office notes indicate that Bates's primary reason for treatment was not the thoracic sprain allowed by the Bureau of Workers' Compensation, but rather for other back pain. This is not completely accurate. A perusal of those records indicates that the thoracic sprain was listed as one of Bates's chief complaints at the time of each treatment.

{¶ 14} Second, Branham pointed out that Bates did not always obtain medical treatment on the day of her absence. However, nothing in the company's written policies demands this, nor is it reasonable. See, for an analogous example, *LaChapelle v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 166, 2009-Ohio-3399, 920 N.E.2d 155, in which the court held it to be "unreasonable to find just cause in [the employee's] failure to remove a bulky machine [from her office] the same business day she was told to," when she ultimately moved it "as quickly as practicable." Id. at ¶ 27.

{¶ 15} This is especially true with health care. Such a requirement would fail to recognize that sometimes immediate treatment simply is impossible due to the scheduling limitations of the doctor's office. The evidence demonstrates that Bates obtained treatment as soon as practicable, including paying for one visit out of her own pocket, because she had already used up her visits allotted for her by her worker's compensation claim for that week.

{¶ 16} Third, Branham insisted that although Bates provided either a "Care Certificate" or an "Authorization for Absence" from her doctor's office for each of her absences, none of those documents was sufficient to meet the requirement of "proper medical documentation." She made the decision to reject the documents because none of them specifically declared Bates to be "incapacitated" on the days that she missed work. Although Branham concedes that none of the company's written policies require a finding that the employee be "incapacitated," she claimed that Bates was advised of this requirement verbally. Branham contended that absent such language, Bates's medical documentation was insufficient to avoid the incurrence of an "occurrence."

{¶ 17} Bates testified that she was unaware that she was accumulating "occurrences" until she received her first written warning on October 26, 2006. Once she realized what was happening, she made several inquiries to determine what needed to be done differently in order to avoid further accumulation of "occurrences." Branham acknowledged that Bates requested written clarification of the company policy, but that she (Branham) responded by verbally explaining that the medical documentation needed to state that she was "incapacitated." Unsatisfied with Branham's verbal explanation, Bates began to climb the corporate chain, unsuccessfully seeking written clarification from another person in the worker's compensation department, the compensation manager, the company CEO, and even the company president.

{¶ 18} In *Barney v. GNC Corp.,* Greene App. No. 2001–CA–129, 2002-Ohio-4687, 2002 WL 31002615, Barney called off work and provided a note from her doctor that left her return date open. The company demanded a specific return date and was told that it would be provided upon completion of further testing. When the company fired Barney for failing to furnish the company with a specific return date and for failing to call off work for each day that she missed while those tests were pending, we concluded that she was not at fault for failing to provide further written documentation and that a reasonable person would not have thought it was necessary to call off every day in light of the open-ended note.

{¶ 19} In this case, ABX had no written definition of what would be considered "proper medical documentation." Branham claims that when Bates was injured, she was provided with a sample form that she could have given to her doctor that would have met the company's demands. However, that form was not offered into evidence, and we do not know what specific language it contained. In any event, Branham admitted that Bates was never told that the sample form was mandatory, nor did ABX ever provide Bates's doctor with a copy of the sample form. If Branham wished to see the specific word "incapacitated" in the documentation, she needed to make sure that both Bates and her doctor were fully aware of this requirement, before Bates began to accrue "occurrences," leading to her termination.

{¶ 20} Moreover, even if Bates understood Branham's verbal explanation regarding the insufficiency of her documentation given subsequent to her first written warning, she was well within the bounds of reason to ask for written clarification and verification of this explanation. As in *Barney,* Bates was not in a position to compel her doctor to employ a specific word in his documentation, particularly when such a demand would have been based solely on Bates's interpretation of Branham's directions.

{¶ 21} The trial court noted that Branham admitted that the three "occurrences" assigned due to absences on September 21, October 24 and 25, and November 2 were related, at least in part, to Bates's worker's compensation injury and claim. We agree with the trial court that subject to the vague demand for "proper medical documentation," those absences "should have been counted as only one occurrence." It is unclear why the August 30 and September 28 "occurrences" were not included by the trial court, since the doctor's office notes indicate thoracic sprain as a chief complaint at those times as well. The only difference that we see between these two "occurrences" and the other three is that the August 30 and September 28 absences were each accompanied by a "Care Certificate" rather than an "Authorization of Absence," as were the other three. This does not negate ABX's failure to define "proper medical documentation." Therefore, the August 30 and September 28 absences should also have counted as part of that one "occurrence."

{¶ 22} In light of the lack of definition or description of what would constitute "proper medical documentation" in ABX's written policies, ABX failed to meet its burden of proving that Bates failed to offer "proper medical documentation" of her absences. *Silkert*, 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶ 36. Bates acted reasonably in accepting the documentation that her doctor's office provided. Moreover, upon learning that occurrences were accruing, Bates acted as any reasonable person would and repeatedly sought a written explanation in an attempt to avoid the accrual of more occurrences. Absent a clear, written explanation of the purported deficiency in the medical documentation, Bates was in no position to demand that her doctor suddenly begin to provide different documentation containing the word "incapacitated." In other words, Bates acted as any ordinarily intelligent person would under the same circumstances. *Irvine*, 19 Ohio St.3d at 17, 19 OBR 12, 482 N.E.2d 587.

{¶ 23} The reasons given by the review commission for just cause are not supported by the record. Therefore, we conclude that ABX did not terminate Bates for just cause.

{¶ 24} ABX's sole assignment of error is overruled.

### III

{¶ 25} Having overruled ABX's sole assignment of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.