[Cite as *Shaffer v. Dir., Dept. of Job & Family Servs.*, 2012-Ohio-844.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

SANDRA SHAFFER                          :
                                        :          Appellate Case No. 24762
    Plaintiff-Appellant              :
                                        :          Trial Court Case No. 2009-CV-06771
v.                                      :
                                        :
DEPARTMENT OF JOB & FAMILY              :
SERVICES DIRECTOR, et al.               :          (Civil Appeal from
                                        :           Common Pleas Court)
    Defendant-Appellees              :
                                        :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 2nd day of March, 2012.

. . . . . . . . . . .

DAVID TORCHIA, Atty. Reg. #0015962, Tobias, Torchia & Simon, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202
    Attorney for Plaintiff-Appellant

MICHAEL DEWINE, Atty. Reg. #0009181, by AMY L. KEEGAN, Atty. Reg. #0084353, and PATRIA V. HOSKINS, Atty. Reg. #0034661, Office of the Attorney General, Health & Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215
    Attorney for Defendant-Appellees

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Sandra Shaffer appeals from the trial court's July 8, 2011 decision, entry, and order affirming an administrative decision upholding the denial of her application for unemployment benefits.

{¶ 2}   In her sole assignment of error, Shaffer contends the trial court erred in affirming an administrative decision that was unreasonable and against the weight of the evidence.

{¶ 3}   The record reflects that Shaffer worked as an on-site manager for CBS Personnel Services from July 1998 through December 15, 2005. Her responsibilities included supervising temporary workers at their job sites. In the administrative proceedings below, Shaffer testified that beginning in late August 2005 she was assigned to two of CBS's accounts, Kohl's warehouse and Deceunick of North America. According to Shaffer, she never before had been required to manage two accounts simultaneously. Between the two assignments, Shaffer claimed she was working seven days a week and fifteen to eighteen hours per day (i.e., 105 to 126 hours per week). She testified that her health began to suffer and that a doctor recommended quitting her job. Shaffer further testified that she unsuccessfully sought extra help from her supervisors. Unable to cope with the situation any longer, she resigned on December 16, 2005.

{¶ 4}   Shaffer then applied for unemployment benefits. Her application initially was approved. The Office of Unemployment Compensation found that she had just cause to quit because CBS required her "to work hours that were substantially less favorable than those prevailing for similar work in the locality" and failed to correct the situation despite her objections. Upon redetermination, the benefits approval was affirmed. CBS appealed that decision to the Unemployment Compensation Review Commission. The case proceeded to a telephone hearing during which the only witness was CBS vice-president Carla McKelvey. Based on McKelvey's testimony, the Review Commission denied Shaffer's claim. When

Shaffer's request for further review was disallowed, she appealed to the trial court.

**{¶ 5}** On May 12, 2009, the trial court remanded the case to the Review Commission for a new hearing based on Shaffer's non-participation in the first hearing. At the new hearing, Shaffer and McKelvey both testified. Shaffer's testimony was consistent with the version of events set forth above. For her part, McKelvey denied that Shaffer was required to manage the Kohl's and Deceunick accounts simultaneously. She testified that Shaffer worked the Deceunick account through October 2005 and then was assigned to the Kohl's account in November 2005. McKelvey admitted knowing that Shaffer sometimes would "stop in" at Kohl's while managing the Deceunick account. McKelvey testified, however, that Shaffer was not required to do so. She further testified that Shaffer was not required to work fifteen- to eighteen-hour days.

**{¶ 6}** McKelvey also disputed Shaffer's claim about not receiving assistance. According to McKelvey, Shaffer received additional help when she requested it. McKelvey named several people who were sent to help Shaffer. McKelvey further testified that Shaffer was permitted to take a two-week vacation in November 2005. Finally, McKelvey testified that the only real difference between the fall of 2005 and prior years was that CBS had switched to a new automated payroll system. McKelvey stated that Shaffer became "backlogged" in her work while struggling to learn the new system.

**{¶ 7}** Following the hearing, the Review Commission denied Shaffer's claim. The Review Commission's decision contained the following factual findings:

Claimant worked as the on-site manager from July 8, 1998, through December 16, 2005.

Claimant worked as the on-site manager at a Kohl's warehouse. Each fall Kohl's hires a substantial number of temporary workers through CBS Personnel Services to meet demand for merchandise leading up to Christmas. As many as 300 employees are supplied by CBS Personnel. The fall of 2005 was claimant's fourth year managing the account. Although claimant also managed another account, after October 31, 2005, claimant worked strictly at Kohl's.

In mid-November 2005, claimant asked for assistance managing the account. Another employee was sent to the location to assist claimant. Claimant requested a 2 week vacation in November 2005. Her request was granted.

CBS Personnel instituted a swipe card attendance system in the fall of 2005. Claimant had difficulty adjusting to the change in the timekeeping system.

On December 16, 2005, claimant met with her supervisors at CBS Personnel. She submitted her resignation. She mentioned the stress of the job and also domestic issues that led to her decision. Claimant has also contended that she was advised by her physician to quit the job. She did not present any medical documentation to the employer, or to the Review Commission, advising her to quit her employment with CBS Personnel Services.

**{¶ 8}** After making these factual findings, the Review Commission reasoned as follows:

Claimant contends that she justifiably resigned her position with CBS Personnel Services due to the stress of managing a difficult account. The Review Commission disagrees with claimant's contention.

Claimant had managed the Kohl's warehouse account during the pre-holiday months for many years. She was fully aware of the stress of managing the account during the busiest time of the year. The employer tried to help by assigning another employee to assist claimant. They also allowed claimant to take a two-week vacation in November 2005. The evidence suggests that claimant had other sources of stress outside of the workplace. Regarding claimant's health concerns, there has been no evidence that a medical professional advised her to quit her employment. For these reasons, it will be held that claimant quit employment with CBS Personnel Services without just cause.

{¶ 9} Shaffer appealed the Review Commission's decision to the trial court. On July 8, 2011, the trial court affirmed the Review Commission's denial of unemployment benefits. In relevant part, the trial court, with emphasis in the original, reasoned:

The **evidence in the record supports the Commission's decision that Appellant quit without just cause**. Appellant had worked for Employer for several years and knew that her job duties ramped up in the fourth quarter. The Review Commission found more credible that testimony from the Employer demonstrating that Appellant was assigned only to Kohl's from October 2005 through the end of her employment. Credible testimony from the Employer also

demonstrated that, when Appellant asked for help with her workload, she was given assistance. She was also given a two week vacation during the busiest part of the year. Furthermore, Appellant failed to provide **any** documentation or evidence other than her self-serving testimony that she quit her job because her physician recommended that she quit. If Appellant ultimately required a less-stressful position, she had a duty to inquire about other reasonable solutions **before** voluntarily resigning her position with only two weeks left of the "busy season."

{¶ 10} Our appellate review of a denial of unemployment benefits is limited. *Johnson v. SK Tech., Inc*., 2d Dist. Montgomery App. No. 23522, 2010-Ohio-3449, ¶18, citing *Silkert v. Ohio Dept. of Job & Family Services*, 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶26 (2d Dist.). "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv*., 73 Ohio St.3d 694, 1995-Ohio-206, 653 N.E.2d 1207, paragraph one of the syllabus. "All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and cannot make factual findings or determine witness credibility. * * * However, these courts 'do have the duty to determine whether the board's decision is supported by evidence in the record.'" *Silkert* at ¶26, quoting *Tzangas*.

{¶ 11} Ohio Revised Code Section 4141.29 establishes the eligibility requirements for unemployment benefits. A claimant is ineligible if she quits her job without

"just cause." R.C. 4141.29(D)(2)(a). The issue before us is whether Shaffer had just cause to quit her job with CBS. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985). In conducting our review, we bear in mind that the unemployment compensation statutes should be construed liberally in favor of the applicant. *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin*, 2d Dist. Clark App. No. 2006-CA-32, 2007-Ohio-1674, ¶10.

{¶ 12}    Upon review, we reject Shaffer's argument that the Review Commission's decision was unreasonable and against the weight of the evidence. The crux of Shaffer's argument below was that CBS required her to manage two accounts simultaneously and largely ignored her pleas for help. Shaffer claimed this forced her to work seven days a week and fifteen to eighteen hours per day. Shaffer asserted that this situation was unreasonable, that it affected her health, and that it gave her just cause for quitting.

{¶ 13}    Citing her own testimony, Shaffer repeats the foregoing theme on appeal. She first contends the Review Commission incorrectly found that she was managing only one account at a time. This finding, however, is supported by the testimony of CBS vice-president McKelvey, which the Review Commission was entitled to credit. *See*, *e.g.*, *Futey v. Ohio Dept. of Job & Family Services*, 5th Dist. Richland App. No. 04 CA 14, 2004-Ohio-5400, ¶14 (recognizing that "the resolution of factual matters is within the province of the Review Commission and its hearing officers as triers of fact").

{¶ 14}    Shaffer next claims the Review Commission incorrectly "made it appear that the job did not change and Appellant was simply working at Kohl's as she had in

the past and that she had been able to handle the stress in previous years." Shaffer asserts that this is incorrect because (1) she was simultaneously managing two accounts in the fall of 2005 instead of just one and (2) the work load on the Kohl's account had increased in the fall of 2005 but she had not been given extra help. Once again, however, McKelvey testified to the contrary. As set forth above, McKelvey stated that Shaffer was not required to manage two accounts simultaneously. McKelvey also testified that the only real difference between the fall of 2005 and prior years was that CBS had implemented a new automated payroll system, which caused Shaffer trouble. McKelvey testified that CBS provided extra help to alleviate the situation and gave Shaffer a two-week vacation during the company's busy season. The Review Commission was entitled to credit McKelvey's testimony.

{¶ 15} Shaffer next complains that the Review Commission improperly discounted her testimony about medical problems and a doctor's suggestion that she should quit her job. The weight to be given to Shaffer's testimony, however, was a matter for the Review Commission to resolve as the trier of fact. In evaluating Shaffer's testimony, the Review Commission was entitled to consider the absence of any medical documentation to support her allegations.

{¶ 16} Shaffer also asserts that CBS failed to provide her with sufficient help, despite her requests, and that the lack of help compelled her to work fifteen to eighteen hours a day, seven days a week. As a factual matter, the Review Commission found, based on McKelvey's testimony, that Shaffer did receive help when it was requested and that she was permitted to take a two-week vacation in November 2005. The Review Commission's factual finding that Shaffer was not required to manage two accounts simultaneously also undercuts

Shaffer's claim that CBS required her to work fifteen to eighteen hours a day, seven days a week. In her own testimony, Shaffer asserted that these extreme hours were necessary because she was required to manage two accounts at once. In light of the Review Commission's contrary finding that Shaffer was not required to manage two accounts at once, it reasonably follows that she was not compelled to work fifteen to eighteen hours a day, seven days a week.

{¶ 17}     Finally, Shaffer contends it was "undisputed" below that she worked fifteen to eighteen hours a day, seven days a week. We disagree. In the first evidentiary hearing, McKelvey explicitly denied that assertion. In the second evidentiary hearing, McKelvey testified that such hours "would not have been required of her." Moreover, the Review Commission's factual finding that Shaffer was not required to manage the Kohl's and Deceunick accounts simultaneously undermines Shaffer's claim that CBS forced her to work 105 to 126 hours per week.

{¶ 18}     On the record before us, we cannot say the Review Commission's finding of no just cause for Shaffer to quit her job was unlawful, unreasonable, or against the weight of the evidence. Accordingly, we overrule her assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

David Torchia
Amy L. Keegan
Patria V. Hoskins
Hon. Steven K. Dankof