[Cite as *Niskala v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-5705.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

GREGORY R. NISKALA

    Appellant

    v.

DIRECTOR, OHIO DEPARTMENT OF
JOB & FAMILY SERVICES, et al.

    Appellees

C.A. No.     10CA0086-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09CIV2243

DECISION AND JOURNAL ENTRY

Dated: November 7, 2011

---

MOORE, Judge.

{¶1} Appellant, Gregory R. Niskala, appeals from the judgment of the Medina County Court of Common Pleas. This Court reverses.

I.

{¶2} Appellant, Gregory R. Niskala, was employed by Appellee, Carey Color, Inc. ("Carey"), from September 14, 1992, to June 19, 2009. At the time of his discharge, he was a desktop editor. He was discharged due to excessive absenteeism and tardiness.

{¶3} In 2002, Niskala was diagnosed with schizophrenia. He informed his employer of his illness, and was told by the employer that they would work with him to maintain his employment. In late 2008, Niskala's doctor changed his medication, and he began to suffer from oversedation. Specifically, Niskala was having difficulty falling asleep, and when he did fall asleep, he would sleep through his alarm clock. This caused him to arrive late to work on a

number of occasions. He informed his employer of all doctor appointments and medication adjustments, and advised them of the issues he was having with regard to oversedation.

{¶4} Due to his absences or tardiness, Niskala received two verbal warnings and then a written warning on March 16, 2009. The warning advised him that the next course of action would be to switch him to second shift. Niskala was discharged on June 19, 2009, without further warning.

{¶5} On June 22, 2009, Niskala filed an application for unemployment benefits. His application was denied on June 30, 2009, with a finding that he was discharged by his employer for just cause. Niskala timely appealed, and upon redetermination, the initial determination was affirmed on August 3, 2009. He filed a timely appeal on August 12, 2009, and the Ohio Department of Job & Family Services transferred jurisdiction to the Unemployment Compensation Review Commission ("UCRC") for a hearing.

{¶6} On September 3, 2009, a telephone hearing was held. On September 9, 2009, the hearing officer affirmed the redetermination finding that Niskala was discharged with just cause. On September 30, 2009, Niskala filed a request for review to the UCRC. The request was disallowed on October 14, 2009. Niskala filed an appeal to the Medina County Court of Common Pleas on November 12, 2009. On July 6, 2010, the common pleas court issued a decision denying Niskala's appeal and affirming the decision of the UCRC.

{¶7} Niskala timely filed a notice of appeal. He raises one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED BY AFFIRMING THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S DECISION THAT MR. NISKALA WAS DISCHARGED FOR JUST CAUSE WHEN THAT DECISION WAS UNLAWFUL, UNREASONABLE OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶8} In his sole assignment of error, Niskala argues that the trial court erred in affirming the decision of the Unemployment Compensation Review Commission because that decision was unlawful, unreasonable or against the manifest weight of the evidence. We agree.

{¶9} Niskala applied for unemployment compensation after he was discharged by Carey. R.C. 4141.29(D)(2)(a) prohibits the payment of unemployment compensation if the employee "has been discharged for just cause in connection with the individual's work[.]" R.C. 4141.46 further provides "that the unemployment-compensation statutes must be liberally construed in favor of awarding benefits to the applicant." *Bates v. Airborne Express, Inc.*, 186 Ohio App.3d 506, 2010-Ohio-741, at ¶9.

{¶10} The Ohio Supreme Court has stated that "just cause" is "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 17, quoting *Peyton v. Sun T.V. & Appliances* (1975), 44 Ohio App.2d 10, 12. The determination of whether there is just cause for discharge depends upon the factual circumstances of each case. *Warrensville Hts. v. Jennings* (1991), 58 Ohio St.3d 206, 207.

{¶11} This Court has noted that "[i]t is important to distinguish between just cause for discharge in the context of unemployment compensation and in other contexts. An employer may justifiably discharge an employee without incurring liability for wrongful discharge, but that

same employee may be entitled to unemployment compensation benefits." *Westphal v. Cracker Barrell Old Country Store, Inc.*, 9th Dist. No. 09CA009602, 2010-Ohio-190, at ¶10, quoting *Durgan v. Ohio Bur. of Emp. Serv.* (1996), 110 Ohio App.3d 545, 549-550. This is so because just cause, under the Unemployment Compensation Act, is predicated upon employee fault. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 698. We are, therefore, unconcerned with the motivation or correctness of the decision to discharge. *Friedman v. Physicians and Surgeons Ambulance Serv.* (Jan. 6, 1982), 9th Dist. No. 10287. The Act protects those employees who cannot control the situation that leads to their separation from employment. See *Tzangas*, 73 Ohio St.3d at 697.

{¶12} Consistent with that purpose, courts have repeatedly held that a discharge is considered to be for just cause where an employee's conduct demonstrates some degree of fault, such as behavior that displays an unreasonable disregard for his employer's best interests. *Tzangas*, 73 Ohio St.3d at paragraph two of the syllabus. The Ohio Supreme Court has specifically held: "When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination." *Tzangas*, 73 Ohio St.3d at 697-698.

{¶13} The Ohio Supreme Court has further stated that the employee has the burden to prove his entitlement to unemployment compensation under R.C. 4141.29(D)(2)(a). *Irvine*, 19 Ohio St.3d at 17. To show he is entitled to unemployment compensation, the employee must provide evidence that his discharge was without just cause by demonstrating he was without fault in the incident resulting in his termination. Id.

{¶14} The scope of our review in unemployment-compensation appeals is quite limited. "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas*, 73 Ohio St.3d at paragraph one of the syllabus. This court cannot make factual findings or determine witness credibility but we are required "to determine whether the board's decision is supported by the evidence in the record." Id. at 696. "[T]his Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court[.]" (Citations omitted.) *Upton v. Rapid Mailing Servs.*, 9th Dist. No. 21714, 2004-Ohio-966, at ¶9. In determining whether a UCRC decision is or is not supported by the manifest weight of the evidence, this Court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Const. Co.* (1978), 54 Ohio St.2d 279, syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

{¶15} In the instant matter, the UCRC found that Niskala was discharged for just cause for excessive absences and tardies. It concluded that "[a]lthough claimant knew that his job was in jeopardy due to his absences and tardies, he did not take any steps to protect his job. He did not provide any medical documentation to help explain his attendance issues, and did not ask to see if there was any type of intermittent leave available for him. The employer has shown that claimant's actions were detrimental and that they had good cause for his discharge."

{¶16} At the hearing, Executive Vice President Russ Kotalec testified on behalf of Carey. He testified that Niskala was terminated for excessive tardiness and absenteeism. He did not know how many days Niskala had been absent or tardy, or when these events had occurred.

He averred that a written warning was given on March 16, 2009, but he did not know the number of days that Niskala was absent or tardy that led to that warning. He was unable to provide the number of days that Niskala was late or tardy, or the specific dates, that led to his discharge.

{¶17} Kotalec also testified as to the company's policy regarding absences and tardies. He testified that if a person was absent for what the company determined to be an excessive amount of time, then they were given a warning. If they continued what the company determined to be excessive tardiness and absenteeism following the warning, then they were terminated. He was unable to give a number of absences or tardies that leads to warnings or discharge. He averred that the company is lenient on this policy and tries to work with the employees. He acknowledged that Niskala gave medical reasons for his absenteeism and tardiness, but no medical documentation was provided.

{¶18} Systems Manager Mark Kyner also testified on behalf of Carey. He was Niskala's supervisor. He gave the written warning on March 16, 2009, and gave verbal warnings on other dates. He was unsure when the verbal warnings were given. He did not know the total number of absences or tardies Niskala had at the time of discharge, or the respective dates. He acknowledged that Niskala had mentioned that he went to the doctor and that his doctor was switching around his medications. He did not know whether the days Niskala was absent or tardy for medical reasons were counted against his attendance.

{¶19} Niskala testified at the hearing. He did not recall how many days he had been absent or tardy. He estimated that he was late zero or one day per week. Every time he was late, he would always call to let them know he was on his way. He was never shown an employee handbook or given a number of absences or tardies that would lead to discharge. He testified that in 2002, he was diagnosed "[m]anic depressant, paranoid schizophrenic, chronic case." He

notified his employers of the diagnosis after his release from the hospital and immediately returned to work. His employers told him they would do whatever they needed to do to work with him and help him keep his job.

{¶20} Niskala conceded that he never provided medical documentation, but instead provided a verbal explanation to his supervisor that his doctor was "tweaking" his medications and that he was having a hard time waking up. This problem began in October 2008, or eight months prior to discharge. He never thought it was necessary to turn in medical documentation because he had already informed his employer of the dates of the appointments, when his medications were adjusted, and the difficulties he was having thereafter. He acknowledged that he received a write-up, but averred that he was never told that his job was in jeopardy due to his absenteeism or tardiness. The written warning he received in March 2009 stated that the next course of action would be to move him to second shift.

{¶21} Based on the above testimony, the UCRC concluded that Niskala admitted "that he was tardy and/or absent a lot" but "did not present any medical documentation of this condition, or the effects the change in his medication would have, to his employer." Essentially, the UCRC found that the termination due to a medical condition was for "just cause" because Niskala failed to provide his employer with medical documents. However, the facts do not indicate that this information was ever requested by the employer. Carey did not request medical documentation upon Niskala's diagnosis seven years prior, or any of the years thereafter. Carey admitted that it has a "lenient" attendance policy. It did not have a record of the absences or tardies that Niskala incurred. There is nothing in the record to support the UCRC's conclusion that excessive absenteeism and tardiness not attributable to illness led to Niskala's discharge.

**{¶22}** This Court has repeatedly held that "absenteeism * * * caused by a bona fide illness or injury is not just cause for termination of an employee." *Lorain Cty. Aud. v. Ohio Unemp. Rev. Comm.*, 185 Ohio App.3d 822, 2010-Ohio-37, at ¶9, quoting *Durgan*, 110 Ohio App.3d at 550. Here, Niskala averred that his absences and tardies were attributed to his medical condition. He notified his employer each time he was going to be absent, and called as soon as he could when he awoke late. This is not a case where the evidence in the record suggests that the absences or tardies were attributable to things other than his medical condition. See, e.g., *Wolmack v. Ohio Bur. of Emp. Servs.* (June 22, 1995), 10th Dist. No. 94APE12-1780, at *1 (concluding that although the claimant alleged that her tardiness on the date of termination was caused by her daughter's medical condition, she "failed to offer evidence of exigent circumstances which prohibited her from timely arriving to work on the other days she reported late."); *Marchese Servs. v. Bradley*, 3d Dist. No. 12-08-06, 2009-Ohio-2618, at ¶29-30 (upholding the board's conclusion that the employee was discharged for just cause where the employer requested medical documentation for the employee's absences, and she was only able to provide documentation for two of the forty-five occurrences).

**{¶23}** In addition, this is not a case where an employer has a written policy that requires documentation for medical absences. See *Durgan*, 110 Ohio App.3d at 551-52 (upholding the board's decision to deny unemployment compensation where the company's no-fault absenteeism policy required medical documentation and the claimant was unable to provide documentation to account for more than half of her absences). Other courts have held where employers have failed to challenge the bona fides of the claimant's medical condition, there is "no necessity for [the claimant] to provide medical evidence of his condition." *Cobbledick Buick, Inc. v. Bd. of Rev., Ohio Bur. of Emp. Servs.* (Apr. 19, 1984), 8th Dist. No. 47430, at *3,

citing *In re Wilkinson* (Nov. 20, 1981), 4th Dist. No. 81 CA 3. Here, there is nothing in the record to suggest that Carey has a written policy or that it ever required medical documentation from employees for absences, or specifically requested medical documentation from Niskala.

{¶24} In addition, the record shows that Niskala submitted to the UCRC a letter from his treating physician averring that Niskala was being treated under his care for a "severe mental condition" and that "[a]s a result of his medication, * * * he has been late to work on a number of occasions because of oversedation." In *Schultz v. Herman's Furniture, Inc.* (1976), 52 Ohio App.2d 161, the Sixth District reversed the board's conclusion that the employee was discharged for just cause and denied unemployment benefits. The court held that where the employee had notified her employer that she would be absent or tardy because she had developed chronic gastritis and cholecystitis, her discharge was not for just cause, and she was entitled to receive unemployment benefits. Id. at 162-63. There, the doctor treating the claimant filed a report with the board certifying that the patient was under his care during specific dates and that she was unable to work. The employer did not dispute this fact. The court concluded that because the claimant notified her employer that she would be absent or tardy because of illness, and because the absenteeism and tardiness was caused by a bona fide illness, there was not just cause in connection with the work for a discharge. Id.

{¶25} Here, Niskala informed Carey of his condition, the change in his medication, and his issues with oversedation. The employer did not dispute this fact, and it did not request medical documentation. Although Niskala did not submit documentation to Carey, he did submit a letter from his treating physician to the UCRC. This letter demonstrates that his absenteeism and tardiness was caused by a bona fide illness, and thus, there was not just cause for termination. *Lorain Cty. Aud.* at ¶9. Accordingly, Niskala's assignment of error is sustained.

III.

**{¶26}** Niskala's assignment of error is sustained. The judgment of the Medina County Court of Common Pleas is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR

APPEARANCES:

ANNE J. RYAN and CHRISTINA M. JANICE, Attorneys at Law, for Appellant.

PATRICK MACQUEENEY, Assistant Attorney General, for Appellee.

SUSAN E. BAKER, Attorney at Law, for Appellee.