[Cite as *Cafaro Mgt. Co. v. Polta*, 2012-Ohio-4558.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CAFARO MANAGEMENT COMPANY, | ) | CASE NO. 11 MA 171 |
| | ) | |
| APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MARCIE POLTA, et al., | ) | |
| | ) | |
| APPELLEES. | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Common Pleas Court, Case No. 10CV2365. |
| JUDGMENT: | Affirmed. |

APPEARANCES:

| | |
|---|---|
| For Appellant: | Attorney Michael Wright<br>2445 Belmont Avenue<br>P.O. Box 2186<br>Youngstown, Ohio 44504-0186 |
| For Appellee: | Attorney Michael DeWine<br>Attorney General<br>Attorney Susan Sheffield<br>Assistant Attorney General<br>20 West Federal Street, 3rd Floor<br>Youngstown, Ohio 44503 |

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: September 25, 2012

VUKOVICH, J.

**{¶1}** Appellant Cafaro Management Company appeals the decision of the Mahoning County Common Pleas Court granting judgment in favor of appellees Marcie Polta and the Ohio Department of Jobs and Family Services (ODJFS). The issue in this case is whether the Review Commission's conclusion that Polta was terminated without just cause was unreasonable, unlawful and against the weight of the evidence. For the reason expressed in depth below, given our limited standard of review and the facts of this case, the judgment of the trial court is hereby affirmed.

<u>STATEMENT OF THE CASE</u>

**{¶2}** In October 2007, Polta was hired by Cafaro as an administrative assistant for the Sandusky Mall. In October 2008, Polta requested a medical leave of absence due to severe migraines. She was granted Short Term Disability leave (STD) and FMLA; the two leaves ran concurrent with each other. STD expired on December 13, 2008 and FMLA expired on January 5, 2009. Cafaro's handbook requires employees to contact their supervisor every thirty days to "report on their status and intention to return to work." Polta claimed that she kept in contact with Cafaro approximately every two weeks and the Hearing Officer found this testimony believable.

**{¶3}** On January 26, 2009, Polta contacted her supervisor about returning to work but indicated that she could not guarantee that she would not need intermittent leaves. Her supervisor informed her that he could not use her if she could not guarantee a 40 hour week.

**{¶4}** On February 1, 2009, she sent an email to her supervisor and the human resources department updating them about her medical condition and asking how she should proceed with her medical leave. On February 9, 2009, Polta was informed that she was discharged from her employment for failing to return to work following the exhaustion of her FMLA leave.

**{¶5}** Thereafter, Polta filed a claim for unemployment compensation. 03/27/09 Claimant Application for Determination of Benefits Rights. The Director determined that she was discharged without just cause and, as such, was eligible for

benefits. 05/01/09 Determination. Cafaro appealed that decision and the Director issued a redetermination which reversed the initial determination. 06/12/09 Redetermination.

**{¶6}** Polta appealed that decision and the matter was transferred to the Review Commission. Three hearings were held before a hearing officer. The first hearing was held on September 29, 2009. Testimony was taken from Polta and Melanie Gemmell, Director of Human Resources. A second hearing was held on October 28, 2009. Polta did not appear at this hearing. Additional testimony was taken from Gemmell. A third hearing was set for November 16, 2009. This hearing was set because a second issue of whether Polta was physically able to work was identified by the hearing officer and the matter was scheduled for a later date to give Polta the opportunity to respond to that issue. Polta did not attend the third hearing, therefore, it was cancelled.

**{¶7}** On December 1, 2009, the Hearing Officer issued its order reversing the Director's redetermination; it determined that Polta was terminated without just cause. Cafaro appealed that decision to the Review Commission.

**{¶8}** On May 19, 2010 the Review Commission issued its decision affirming the Hearing Officer's determination. It reasoned:

> Ms. Gemmell testified that claimant never contacted Cafaro with a return-to-work date after her FMLA approval letter was sent on December 13, 2008. However, claimant presented sworn, credible testimony that she spoke approximately every other week between October of 2008 and January of 2009 with her supervisor, Neil Gray. She presented sworn, credible testimony that she specifically asked him about returning to work, and was told on January 26, 2009, that he could not use her services if she could not guarantee that she would be able to work a full forty-hour week. Claimant's notification to Mr. Gray appears to be consistent with Cafaro's written Short Term Disability policy, which requires that, "As soon as the employee knows the date he or she can return to work, he or she must inform his or her

immediate supervisor of this date." Despite having three separate hearings in this matter, Cafaro never presented or subpoenaed Mr. Gray to dispute claimant's testimony about their conversations.

Neither Cafaro's policies nor federal law required Cafaro to hold open the claimant's position beyond the expiration of her approved twelve-week FMLA leave. However, physical inability to return to work full-time at the end of an FMLA leave is not misconduct which creates just cause for discharge. In *Tzangas, Plakas and Mannos v. OBES* (1995), 73 Ohio St.3d 694, at syllabus paragraph 2, the Ohio Supreme Court held that "[f]ault on behalf of the employee is an essential component of a just cause termination." Claimant's physical inability to work does not constitute fault on her part. Indeed, the courts have held that "absenteeism caused by bona fide illness, reported to the employer, is not just cause for discharge." See, e.g., *Cobbldick Buick, Inc., v. Board of Review* (April 19, 1994), Cuyahoga App. No. 47430, unreported. Based upon the evidence presented in this matter, the Review Commission finds that claimant was discharged by Cafaro without just cause in connection with work.

05/19/10 Review Commission Decision.

{¶9} As to her ability to work, the Review Commission found that she was physically able to return to work. To support this conclusion, it referenced a note from her physician that stated as of January 2009 she was physically able to return to work. The Review Commission further noted that in any specific week when she was physically unable to work due to a migraine, Polta would not be eligible for benefits. However, no such week had been identified by either party, thus it could not conclude that she was physically unable to work.

{¶10} Cafaro appealed that decision to the Mahoning County Common Pleas Court. Following briefing, the magistrate issued a decision affirming the Review

Commission's determination. Cafaro objected to that decision and the ODJFS responded to those objections.

{¶11} Following the review of the objections, the trial court adopted the magistrate's decision and granted judgment in favor of Polta and the ODJFS. Cafaro timely appeals that decision.

ASSIGNMENT OF ERROR

{¶12} "The lower court erred when it overruled Cafaro's objections to the magistrate's decision filed July 27, 2010, and affirmed the Review Commission's May 19, 2010 decision. The Review Commission's conclusion that Polta was terminated without just caused [sic] was unreasonable, unlawful and against the weight of the evidence."

{¶13} Our standard of review in unemployment compensation cases is limited. An appellate court may reverse a board's decision only if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. *Williams v. Ohio Dept. of Job and Family Servs.,* 129 Ohio St.3d 332, 951 N.E.2d 1031, 2011-Ohio-2897, ¶20, citing *Irvine v. Unemployment Compensation Board of Review,* 19 Ohio St.3d 15, 17–18, 482 N.E.2d 587 (1985). An appellate court may not make factual findings or determine the credibility of the witnesses, but rather, is required to make a determination as to whether the board's decision is supported by evidence on the record. *Id.* The hearing officer, as the fact finder, is in the best position to judge the credibility of the witnesses. *Shaffer–Goggin v. Unemployment Compensation Review Commission,* 5th Dist. No. 03–CA–2, 2003–Ohio–6907, citing *Hall v. American Brake Shoe Co.,* 13 Ohio St.2d 11, 233 N.E.2d 582 (1968); *Brown–Brockmeyer Co. v. Roach,* 148 Ohio St. 511, 76 N.E.2d 79 (1947).

{¶14} The Ohio Supreme Court has explained the purpose of the Unemployment Compensation Act:

> The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own. *Irvine* at 17, 19 OBR at 14, 482 N.E.2d at 589. * * *

The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of circumstances but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

*Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697– 698, 653 N.E.2d 1207 (1995). See also *Williams* at 335-36.

**{¶15}** Nevertheless, the unemployment compensation statutes must be liberally construed in favor of awarding benefits to the applicant. *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin,* 2d Dist. No.2006–CA–32, 2007– Ohio–1674, ¶ 10, citing R.C. 4141.46; *Ashwell v. Ohio Dept. of Job & Family Servs.,* 2d Dist. No. 20522, 2005-Ohio-1928, ¶ 43.

**{¶16}** "Just cause" is not defined by the statute, however, the Ohio Supreme Court has explained that it is "'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine* at 17. The determination whether there is just cause for discharge depends upon the factual circumstances of each case. *Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 207, 569 N.E.2d 489 (1991).

**{¶17}** Cafaro is of the position that there was just cause for Polta's termination because she abandoned her position; it explains that it was unreasonable for the Review Commission to conclude otherwise. Cafaro asserts that she was released to work as of January 1, 2009 but she remained absent from work for 38 days after that and thus abandoned her position.

**{¶18}** The Hearing Officer, Review Commission and the Common Pleas Court concluded that Polta did not abandon her position, but was prevented from returning. There is support for such conclusion in the record.

**{¶19}** Polta's doctor provided her with a return to work note that states that she could return to work "as of January 2009." However, it does not state the exact

date of return. Despite Cafaro's insistence to the contrary, "as of January 2009" does not necessarily mean that she was released to return to work on January 1, 2009. Her testimony indicates that she was in contact with her supervisor every two weeks and on January 26, 2009 she informed her supervisor that she could return to work. 09/29/09 Tr. 18-19. She explained that she had a doctor's appointment that week. It is not unreasonable for this testimony to be viewed as meaning she was not released by her Doctor to work until January 26, 2009, the same day she talked to her supervisor about returning to work.

{¶20} Furthermore, given the record it is plausible to find that it was not her failure to return to work that caused her termination, but rather her inability to guarantee that she could work 40 hours a week, every week. As stated above, on January 26, 2009, Polta talked to her supervisor about returning to work. She advised him that she would like to come back, but she could not guarantee him a 40 hour week, every week. According to Polta, when she told the supervisor she would need to take time off when she had a migraine, he stated, "that if [she] couldn't guarantee him that [she] could be there 40 hours a week, every week that it would be no benefit for him to have [her] come back at that time." 09/29/09 Tr. 15. The supervisor wanted a guarantee that Polta would be there every week for 40 hours before agreeing to her return. Cafaro does not dispute that the conversation between Polta and her supervisor occurred; it offered no evidence to the contrary. The conversation implies that had Polta guaranteed a 40 hour work week, she could return to work. Thus, it is plausible to conclude that Cafaro did not view her as abandoning her job. Had Cafaro viewed her as abandoning her position, a qualification of guaranteeing a 40 hour work week every week would not have been placed upon her. As the magistrate aptly noted:

> Cafaro placed an unreasonable condition upon Ms. Polta's return to work. It would be difficult for any employee to make such a "guarantee". Under these circumstances, Ms. Polta did not abandon her job. She tried to return after her leave under FMLA was exhausted, but Cafaro prevented her from returning.

07/27/11 Magistrate's Decision.

**{¶21}** In further support of this conclusion is the fact that none of the letters from Cafaro state the specific date that Polta's FMLA leave was to terminate. In fact, according to Polta, her supervisor indicated to her on January 26, 2009 that while he did not know the date that her leave expired, it would be occurring soon. 09/29/09 Tr. 15. A review of the file indicates that at the time he made that statement her leave already expired; it ended on January 5, 2009. However, he did not indicate at that time that she had abandoned her position by failing to return. Thus, the fact that her FMLA time had expired over two weeks prior to her discussing her return to work with her supervisor does not support Cafaro's position that she abandoned her position. Rather, it has a tendency to show that Cafaro would have retained her had she guaranteed a 40 hour work week.

**{¶22}** Thus, given the time line and Polta's testimony concerning the conversation between herself and her supervisor, it was not unreasonable for the Hearing Officer and Review Commission to conclude that she did not abandon her position.

**{¶23}** Next, Cafaro argues that the Review Commission's conclusion that she was terminated without just cause was against the manifest weight of the evidence.

**{¶24}** Appellate review of the manifest weight of the evidence in a civil case is much more deferential to the trial court than in a criminal case. *State v. Wilson,* 113 Ohio St.3d 382, 865 N.E.2d 1264, 2007–Ohio–2202, ¶ 26. The civil manifest weight of the evidence standard provides that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.* at ¶ 24, citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). The reviewing court is obliged to presume that the findings of the trier of fact are correct. *Id.,* citing *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80–81, 461 N.E.2d 1273 (1984). This presumption arises in part because the fact-finder occupies the best position to watch the witnesses and observe their demeanor,

gestures, eye movements, and voice inflections and to utilize these observations in weighing credibility. *Id.* The *Wilson* Court concluded:

A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.

*Id.*

**{¶25}** As discussed above, there is evidence to support the conclusion that Polta was terminated because she could not guarantee a 40 hour work week. That reason does not qualify as just cause for termination.

**{¶26}** Appellate courts have stated that "absenteeism * * * caused by a bona fide illness or injury is not just cause for termination of an employee." *Lorain Cty. Aud. v. Ohio Unemp. Rev. Comm.,* 185 Ohio App.3d 822, 2010-Ohio-37, 925 N.E.2d 1038, ¶ 9 (9th Dist.); *Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 550, 674 N.E.2d 1208 (9th Dist.1996) (stating a dismissal for excessive absenteeism and tardiness may be classified as being without just cause and, therefore, eligible for unemployment compensation under R.C. 4141.29(D)(2)(a) if the absences were the result of a bona fide illness); *Marchese Servs. v. Bradley*, 3d Dist. No. 12-08-06, 2009-Ohio-2618, ¶ 27; *Woodworth v. Ohio Dept. of Job & Family Servs.*, 8th Dist. No. 91601, 2009-Ohio-734, ¶ 6; *Metal Powder Products, Inc. v. Ohio Bur. of Emp. Serv.*, 69 Ohio App.3d 785, 788, 591 N.E.2d 1285 (4th Dist.1990).

**{¶27}** The FMLA paperwork filled out by Polta's doctor and Polta's testimony established that Polta could not work when she was having a migraine. Thus, it would be a bona fide illness for which if she missed work she could not be terminated for just cause. Likewise, if Polta became sick for another reason, that would constitute a bona fide illness. Thus, terminating Polta's employment because she could not guarantee a 40 hour work week every week when there was a doctor's

documentation that she could not work when she was having a migraine does not constitute just cause.

**{¶28}** It is noted that much of what Cafaro is disputing under this argument and the preceding one concerns Polta's credibility and the Hearing Officer's choice to believe her. As explained above, we will not second guess credibility determinations. In this instance there is no evidence to dispute Polta's testimony that her supervisor told her if she could not guarantee a 40 hour week, she would be of no use to him. Given the time line of how her termination occurred, we should not find that the Review Commission was incorrect in determining that there was no just cause for the termination.

**{¶29}** At this point it is important to distinguish between "just cause" for discharge in the context of an unemployment case and an employer being liable for wrongful discharge. An employer may justifiably terminate an employee without incurring liability for wrongful discharge. However, even though there was a reason to terminate without incurring liability for wrongful discharge, that employee still may be entitled to receive unemployment compensation if he or she can show that the termination was without "just cause." See *Durgan* at 549 (a Ninth District decision noting that firing for absenteeism due to illness is not due to fault and is not just cause under the unemployment compensation system). In other words, even though we are potentially upholding the determination that there was no "just cause" for the termination, that decision in no way suggests that Polta was wrongfully discharged. See *Niskala v. Dir., Ohio Dept. of Job & Family Services*, 9th Dist. No. 10CA0086-M, 2011-Ohio-5705, ¶ 11. Nothing in the record before us even remotely suggests a wrongful discharge, rather it is just a termination without "just cause" for purposes of unemployment compensation.

**{¶30}** Cafaro's last arguments concern what it believes to be inconsistent findings about Polta's ability to work. In finding that there was no just cause for the termination, the Review Commission indicated that a bona fide illness does not constitute just cause; "physical inability to return to work full-time at the end of an FMLA leave is not misconduct which creates just cause for discharge." 05/19/10

Review Commission Decision. Then in determining whether she was able to work, the Review Commission stated:

> Claimant has submitted a note from her physician stating that she was physically able to return to work as of January of 2009. In any specific week where she was physically unable to work due to a migraine, claimant would not be eligible for benefits. However, no such specific week has been identified in this matter by either party. Accordingly, the Review Commission finds that claimant was physically able to work as requested by law beginning on her benefit year beginning date of March 22, 2009.

05/19/10 Review Commission Decision.

**{¶31}** These are not inconsistent findings and are reasonable. First, her termination was based on her inability to guarantee a 40 hour week when she had a bona fide documented illness, which **may** cause her to miss work. As the magistrate indicated, requiring any employee to make the "guarantee" that Cafaro was requesting would be difficult. It would be especially difficult for one with a documented illness. Furthermore, whether she would need to miss work in the future is speculative at that point. It is unclear when or if she would get any more migraines that would cause her to miss work. Thus, the magistrate determined that there was no just cause was based on a **potential** physical inability to work 40 hours every week. It was also based on her inability to guarantee, despite her illness, that she would be able to work 40 hours every week.

**{¶32}** Second, the determination regarding her physical ability to work was supported by the record. Here, the physician indicated that Polta could return to work, but would have to miss work when she had a migraine. As the Review Commission found, neither party indicated a specific week where she had a physical inability to work after she had been cleared to return to work. This was partly because she was terminated prior to being allowed to return to work. Had she been

permitted to return to work and she had a migraine that prevented her from work, Cafaro may have been able to show an inability to work.

{¶33} Cafaro contends that the Review Commission violated the law when it found that the inability to work was not proven by either party. Cafaro correctly asserts that it is the applicant's burden to establish that they are able to work. *Saulter v. Anchor Hocking Corp.*, 10th Dist No. 86AP-73, 1986 WL 6897 (June 17, 1986). Cafaro asserts that the Review Commission shifted the burden to Cafaro to prove Polta could not work. A reading of the decision does not reveal such an action. The decision clearly states that Polta provided a physician statement stating she was able to physically return to work. Polta's submission of the physician note provided evidence of the ability to work. Thus, she met her burden. Although the Review Commission did state that neither party identified a specific week where Polta was unable to work due to a migraine, such a statement does not demonstrate an illegal shifting of the burden. It is Polta's burden to show an ability to work (which, as referenced above, she did). It is not her burden to show an inability to work. If Cafaro wanted to call into question her evidence and assertion of an ability to work, it could have pointed to a specific week where she could not perform because of migraines. However, as the Review Commission noted, it did not.

{¶34} For the reasons expressed above and our limited standard of review, we find that this assignment of error lacks merit. The Common Pleas Court's decision to uphold the Review Commission's decision is hereby affirmed; Polta was terminated without just cause.

Donofrio, J., concurs.

Waite, P.J., concurs.