WELBAUM, J.
{¶ 1} In this case, Appellant, Paula McLaughlin, appeals from a trial court judgment reversing the decision of the Unemployment Compensation Review Commission ("UCRC"). Previously, the UCRC found that McLaughlin had been discharged without just cause by Appellee, Young Women's Christian Association of Dayton, Ohio ("YWCA"). In support of her appeal, McLaughlin contends that the trial court erred by reversing UCRC's decision, because the decision was not unlawful, unreasonable, or against the manifest weight of the evidence.
{¶ 2} We conclude that the trial court did not err in finding that YWCA fired McLaughlin for just cause and that UCRC's decision was unlawful, unreasonable, and against the manifest weight of the evidence. Accordingly, the judgment of the trial court will be affirmed.
I. Facts and Course of Proceedings
{¶ 3} McLaughlin was hired by YWCA as a Special Events Coordinator on November 7, 2014. She was terminated from employment on October 21, 2015, following an unexcused absence from work on Friday, October 16, 2015. McLaughlin and two YWCA employees gave differing versions of the events that led up to *110 McLaughlin's termination from employment.
{¶ 4} According to McLaughlin, she had received permission from her direct supervisor, Linda Menz, to take Friday, October 16th off from work. Transcript of February 10, 2016 Hearing, p. 8. McLaughlin received this permission from Menz during the week of October 9th. Id. at 9. At the time, McLaughlin was working on an event scheduled for October 13th and asked Menz if she could have the 16th off rather than the day after the event. According to McLaughlin, in the past she had received a day off after a big event in recognition of the amount of time she had spent preparing for the event. During her discussion with Menz, McLaughlin mentioned wanting to go to Michigan on the 16th for the weekend. Id. Based on Menz's approval, McLaughlin put a deposit down on a cottage in Michigan. In the past, when McLaughlin had been given the day off after an event, she did not have to submit a request for personal time in these circumstances. Id. at 30. McLaughlin stated the following regarding the approval she had received to take off from work on the 16th (id. at 31):
It was the Y-Women Breakfast was on October 13th and I had spoken to Linda, which was the Tuesday, I had spoken to Linda the week prior because I knew I had worked a number of weekends leading up to the event and also evenings. So, I had spoken to Linda and requested instead of the Wednesday, which was the day after the event, that I take the Friday off because I wanted to go to Michigan.
{¶ 5} On October 15th, McLaughlin reminded Menz that she would be taking the next day off from work. But Menz reversed course and said that she was not comfortable with McLaughlin taking the 16th off because McLaughlin had a negative personal time balance. Id. at 10. McLaughlin was allowed 120 hours of personal time per year. Menz suggested that McLaughlin speak with Lilly Jennings in Human Resources about her negative personal time balance. Id.
{¶ 6} McLaughlin met with Jennings and explained to her that McLaughlin had already worked excessive hours due to the big event on October 13th and that McLaughlin had always been able to take a day off after an event. Jennings said that there was nothing she could do. McLaughlin then went back to speak with Menz, who said that she was sorry because she knew how much McLaughlin was looking forward to the weekend and suggested that McLaughlin should try to speak to Shannon Isom, the C.E.O. of YWCA. Id. McLaughlin tried to speak with Isom, but she was on the way out of the office. Isom asked if the matter could wait until she returned in about an hour. McLaughlin waited but Isom did not return to the office that day. Id. McLaughlin wrote an email to Isom on the 15th about the matter but did not receive a response. Id. at 11.
{¶ 7} On October 16th, McLaughlin came into the office in the morning and worked a couple of hours. McLaughlin tried to speak with Isom, but she was not in the office that morning. McLaughlin also spoke with Menz and alerted her that McLaughlin had to leave to go on her family vacation in Michigan. Menz told McLaughlin that she would get a write-up if she left early on the 16th. Id. McLaughlin returned to work on Monday morning. On Wednesday, October 21, 2015, McLaughlin was fired by YWCA after a meeting with Isom and Jennings.
{¶ 8} Menz had a different recollection of the events leading up to McLaughlin's termination from employment. According to Menz, she was not aware that there were times when YWCA employees received *111 informal days off because of working a large number of hours. Id. at 22. And she did not "specifically recall" any circumstances where McLaughlin was allowed to take the next day off after the day of an event. Id. at 23. Menz conceded that it was possible that McLaughlin received time off in the past without use of personal time after an event, but she did not recall any specific instance when this occurred. Id. at 30. Menz stated that October 14, 2015 was the first day on which McLaughlin had mentioned wanting to take off October 16th. On October the 15th, Menz advised McLaughlin that Menz was told by Human Resources that there was a negative personal time balance and therefore the leave could not be approved. Menz stated that McLaughlin "said she understood." Id. at 23. At first, Menz stated that she "never actually knew why she wanted the time," but later stated that "I think she did mention it" and that McLaughlin did discuss with Menz that she had been working a lot recently and that was part of the reason she wanted to take the 16th off from work. Id. at 24. According to Menz, McLaughlin did object to the idea that she did not have personal time available. But Menz did not discuss with her where or how the personal time may have been used. Id. at 25-26.
{¶ 9} Menz gave the following description of what happened on October 16th (id. at 26):
Paula came into my office at some point and just said she was leaving then and I asked if she had indeed spoken with the HR manager or the CEO and she said no. And, so I said, "I don't know what's going to happen to you if you just leave." And Paula at that point said "I don't care. They can do whatever they want to do."
{¶ 10} Lillian Jennings, who was the Human Resources Manager at the time of McLaughlin's firing, stated that McLaughlin reported to Linda Menz for the communications part of her job and also reported to Shannon Isom, the C.E.O. of YWCA. According to Jennings, when she informed McLaughlin on October 15th that Human Resources could not approve the day off, McLaughlin "became very upset at that point and just got teary-eyed and left the room that we were in." Id. at 21. Jennings stated that she sat in on the termination meeting on October 21, 2015, and the termination was based solely on the one incident of leaving work without permission that occurred on October 16, 2015.
{¶ 11} After her termination from YWCA, McLaughlin filed an application for determination of unemployment benefit rights. On December 30, 2015, McLaughlin's application for benefits was disallowed. McLaughlin filed a timely appeal from the decision and the matter was transferred to the Unemployment Compensation Review Commission. Telephone hearings were held by a hearing officer on January 22, 2016 and February 10, 2016. Based on the evidence presented at the hearings, the UCRC reversed the Director's redetermination, found that McLaughlin was discharged by YWCA without just cause, and remanded the case to the Ohio Department of Job and Family Services to calculate the monetary entitlement to which McLaughlin was due.
{¶ 12} YWCA filed an appeal of the agency's decision to the Montgomery County Court of Common Pleas. The trial court found that McLaughlin's testimony was not credible and that the UCRC's decision was unlawful, unreasonable, and against the manifest weight of the evidence. Therefore, the trial court sustained YWCA's administrative appeal. McLaughlin appeals from this decision of the trial court.
*112 II. McLaughlin Was Fired For Just Cause When She Left Work Without Permission And Without A Compelling Reason To Do So
{¶ 13} McLaughlin's sole assignment of error states:
THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO FOLLOW THE STANDARD OF REVIEW SET FORTH AT OHIO REVISED CODE SECTION 4144.282(H) [sic] AND WHEN IT FOUND THAT APPELLANT PAULA MCLAUGHLIN WAS TERMINATED FROM HER JOB WITH YWCA FOR CAUSE.
{¶ 14} R.C. 4141.282(A) allows aggrieved parties to appeal decisions of the UCRC to the court of common pleas. The standard of review for the common pleas court is outlined in R.C. 4141.282(H), which states that "[i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."
{¶ 15} "This limited standard of review applies to all appellate courts." (Citation omitted.) Williams v. Ohio Dept. of Job & Family Servs. , 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 20. "Thus, a reviewing court may not make factual findings or determine a witness's credibility and must affirm the commission's finding if some competent, credible evidence in the record supports it. * * * In other words, a reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach different conclusions.' " Id. , quoting Irvine v. Unemp. Comp. Bd. of Review , 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985).
{¶ 16} Although our review is limited, reviewing courts " 'do have the duty to determine whether the board's decision is supported by the evidence in the record.' " Silkert v. Ohio Dept. of Job & Family Servs. , 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶ 26 (2d Dist.), quoting Tzangas, Plakas & Mannos, Attorneys v. Ohio Bureau of Employment Servs. , 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995).
{¶ 17} R.C. 4141.29 sets forth the eligibility requirements for unemployment compensation. Pursuant to R.C. 4141.29(D)(2)(a), a claimant is prohibited from receiving unemployment compensation if discharged with just cause. " 'Just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " Tzangas at 697, 653 N.E.2d 1207, quoting Irvine at 17, 482 N.E.2d 587. Whether just cause exists is unique to the facts of each case. "[F]ault is essential to the unique chemistry of a just cause termination." Tzangas at 698, 653 N.E.2d 1207.
{¶ 18} In the UCRC's March 1, 2016 Decision, the Hearing Officer made the following findings of fact:
Claimant began work with Young Women's Christian Association of Dayton, Ohio on or about November 7, 2014. She was employed as special events and communications manager.
Young Women's Christian Association of Dayton, Ohio prohibits flextime. However, the employer maintains an informal practice that allows supervisors to grant time off for employees after that employee has worked an excessive amount of hours in the prior days.
Claimant had been working additional hours organizing an event that occurred on or about October 7, 2015. In the past, claimant had been granted time off on a *113 day after an event due to the excessive amount of hours she worked in the time leading up to the event.
On or about October 7, 2015, claimant discussed with her supervisor that because of the increased hours she had been working for this event, she wanted to take off October 16, 2015. Claimant told the supervisor that she intended to put down a deposit for a cottage in Michigan for the weekend of October 19, 2015. Claimant's supervisor originally told claimant she was permitted to take that time off work.
On October 15, 2015, the employer notified claimant that she would not be allowed to take the next day off because she did not have sufficient PTO. Claimant objected and contacted human resources to resolve the issue. Human resources told claimant that there was nothing that could be done.
On October 16, 2015, claimant reported to work as scheduled. However she was concerned about losing the money she had put down for the cabin that weekend. After a few hours, she notified the employer that she was leaving.
Young Women's Christian Association of Dayton, Ohio discharged claimant. She had no prior discipline for attendance.
{¶ 19} Based on these findings of fact, the Hearing Officer found that McLaughlin was discharged by YWCA without just cause in connection with work. The Hearing Officer provided the following reasoning for this decision:
Claimant provided sworn credible testimony that she had previously discussed taking off on October 16, 2015, with her supervisor and was told it was okay to do so. She then paid a deposit for a cabin that weekend based on this approval.
While the employer contends that claimant's time off could not be allowed due to the policy prohibiting flex-time, the employer admits that there is an accepted informal practice that allows supervisors to grant a day off after an employee has worked an excessive amount of hours.
Claimant left work after her day-off approval had been revoked by the employer. Before doing so, claimant attempted to discuss her concerns with the employer. When leaving work on October 16, 2015, claimant properly notified the employer that she was leaving. She was not warned at that time that this single incident would result in discharge. While claimant may have properly been subject to some level of discipline for this incident, the evidence does not establish that her actions were so egregious or unreasonable as to warrant a denial of unemployment benefits.
{¶ 20} YWCA appealed this decision to the Montgomery County Common Pleas Court. After a review of the record, the trial court reversed the decision of the UCRC, finding that (Dkt. 16, p. 5-6):
Upon review, the Court finds that Appellant had just cause to terminate Ms. McLaughlin for several reasons. First, the Court notes that Appellant's Code of Conduct specifically states that "[u]nauthorized absence from workstation during the workday or abandoning one's job" may constitute grounds for immediate discharge. Further, pursuant to Ms. McLaughlin's testimony, she had access to the Code of Conduct and understood Appellant's policies. Moreover, Ms. McLaughlin specifically testified that she knew about the provision that allowed Appellant to terminate employees for insubordination and unauthorized absence, and further admitted that her *114 absence on October 16, 2016 was not approved.
Next, the Court finds that Appellee ODJFS's assertion that Appellant had an informal policy of allowing employees to take a day off after working excessive hours lacks merit. Specifically, Ms. McLaughlin's supervisor testified that there are certain occasions where an employee will be allowed to take a day off, following an excessive amount of work leading up to an event; however, she also testified that this is based upon the current needs of the organization, and depends completely on the specific circumstances surrounding the request and the employee at issue. The Court notes that there was no credible evidence presented to indicate that Appellant ever had any flextime policy in place, or that Ms. McLaughlin should have reasonably assumed that she would be given the date of October 16, 2015 off. Based upon the record and testimony in this matter, Ms. McLaughlin had negative 46 hours of paid time off when she asked to take off work on October 16, 2015, and her supervisor testified that Ms. McLaughlin had just taken a two week leave from work in the two months leading up to October 16, 2015. Consequently, it appears reasonable to the Court that Ms. McLaughlin would be expected to come to work on October 16, 2015.
Finally, the Court finds that Appellee ODJFS's argument that Ms. McLaughlin received prior permission from her supervisor to take off on October 16, 2015 is not credible. Although Ms. McLaughlin stated that her supervisor verbally approved her request to take off work on October 16, 2015, Appellant credibly notes that Ms. McLaughlin failed to raise this assertion when she was terminated, nor did she refer to this alleged prior approval in her subsequent e-mail to the Human Resources Manager, asking her to detail the grounds for Ms. McLaughlin's termination. Rather, Ms. McLaughlin's supervisor credibly testified that she advised Ms. McLaughlin that her request to take October 16, 2015 off from work would not be approved and, if she left without authorization, her supervisor did not know what type of disciplinary action would be taken. The Court acknowledges that, generally, Appellee UCRC's credibility determinations would be given deference; however, here, Appellee UCRC found Ms. McLaughlin to be credible in spite of testimony and documentation that directly contradicted her claims. Specifically, in an e-mail sent to the Human Resources Manager following her termination, Ms. McLaughlin asked for a detailed explanation for her termination. The Human Resources Manager replied, indicating that Ms. McLaughlin's initial request could not be approved because of her negative paid time off balance, and further stating that Ms. McLaughlin's absence on October 16, 2015 was unauthorized. There was no reference to any claim that Ms. McLaughlin's supervisor had approved her request for time off, or any confusion about the existence of a flextime policy. As a result, it is clear to the Court that Ms. McLaughlin's testimony lacks credibility, and reasonable minds could not differ in that regard.
{¶ 21} McLaughlin contends that the trial court made several credibility determinations that differed from the credibility determinations made by the hearing officer. For example, McLaughlin testified that there was an informal policy in place to get a day off after working a big event. Menz did not recall such an informal policy and both Menz and Jennings testified that there was no official flextime policy. The *115 hearing officer chose to credit the testimony of McLaughlin over Menz and Jennings, while the trial court decided to do the opposite. Similarly, the trial court found McLaughlin's testimony about receiving prior permission to take off October 16th was not credible, while the hearing officer found this testimony credible. Finally, the trial court made a negative inference against McLaughlin based on a post-termination e-mail exchange between McLaughlin and Jennings in which McLaughlin simply asked Jennings to put the reasons for termination in writing.
{¶ 22} McLaughlin is correct that the trial court, as well as appellate courts, are limited in their review of credibility determinations made by the UCRC. But the credibility determinations made by the trial court in this matter are not dispositive of the issue before us. As a reviewing court, our duty in the case before us is to determine whether the UCRC's decision is supported by the evidence in the record. Silkert , 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, at ¶ 26. Based on our review of the record, we conclude that UCRC's decision is not supported by the record.
{¶ 23} Crediting all of McLaughlin's testimony about the events leading up to her termination, the following key facts emerge: (1) during the week of October 9th, McLaughlin received permission from Menz to take October 16th off from work due to the amount of work she was performing for an October 13th event; (2) based on Menz's approval, McLaughlin booked a family trip to Michigan for the weekend of October 16-18; (3) Menz alerted McLaughlin on October 15th that the permission to take off the next day had been revoked; (4) Jennings confirmed to McLaughlin on October 15th that McLaughlin did not have permission to take off October 16th; (5) McLaughlin left work on October 16th without permission from her employer; and (6) McLaughlin was aware of YWCA's written policy that leaving work early without permission was a ground for termination from employment.
{¶ 24} As we have previously held, "[a]n employer may reasonably set the days and hours of employment. Whether an employee who is discharged for failing to comply with the schedule has been discharged for 'just cause' * * * is a question of fact that depends on the totality of the circumstances." Schadek v. Administrator, Ohio Bureau of Employment Servs. , 2d Dist. Montgomery No. 11569, 1990 WL 80560, *2 (June 15, 1990). "The law looks to the degree and nature of the employee's 'fault' * * * and the extent to which [she] has exhibited a disregard of [her] employer's interests." Id. While occasional absenteeism and tardiness caused by a bona fide illness may not be just cause for a discharge, "unauthorized departure of the employer's premises and abandonment of the work duties assigned may constitute 'just cause' in the absence of a compelling need demonstrated in the record." Id.
{¶ 25} It is undisputed that McLaughlin knew on October 15th that she did not have permission to take the next day off from work. But she made a deliberate decision on October 16th to leave work without permission prior to 10:00 A.M. She was aware of YWCA's policy that she could be terminated from employment if she left work early without permission. But she chose to do so anyway. The sole reason provided for making this decision was the fact that McLaughlin had plans to go to Michigan for the weekend. While we acknowledge the fact that McLaughlin received permission from her supervisor a week prior to take off October the 16th, it is undisputed that this permission had *116 been revoked by October 15th. McLaughlin made a deliberate decision to leave work early and the fact that she had booked a cottage in Michigan for that weekend does not establish the type of compelling need that would excuse her decision to completely disregard her employer's business interest. Schadek . Therefore, YWCA had just cause to fire McLaughlin.
{¶ 26} After reviewing the administrative record, we conclude that UCRC's decision finding that YWCA did not have just cause to discharge McLaughlin is unlawful, unreasonable, and against the manifest weight of the evidence. The judgment of the trial court will be affirmed.
III. Conclusion
{¶ 27} McLaughlin's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
TUCKER, J., concurs.