[Cite as *Beard v. Dir. of Job & Family Servs.*, 2022-Ohio-1690.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| TYRONE A. BEARD | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29298 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-1530 |
| | : | |
| DIRECTOR OF JOB AND FAMILY | : | (Civil Appeal from |
| SERVICES, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of May, 2022.

. . . . . . . . . . .

TYRONE A. BEARD, 139 Reisinger Avenue, Dayton, Ohio 45417
        Plaintiff-Appellant, Pro Se

ROBIN A. JARVIS, Atty. Reg. No. 0069752, Assistant Attorney General, 1700 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202
        Attorney for Defendants-Appellees

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Tyrone A. Beard, appeals pro se from a trial court judgment affirming the decision of the Unemployment Compensation Review Commission ("UCRC"). The UCRC denied Beard's claim for unemployment benefits, finding that Beard quit his job without just cause.

**{¶ 2}** Beard failed to include any assignments of error in his brief. However, Defendant-Appellee, the Director of the Ohio Department of Job and Family Services ("ODJFS"), has suggested an appropriate issue, i.e., whether UCRC's decision was unlawful, unreasonable, or against the manifest weight of the evidence. We will adopt ODJFS's suggestion. After considering the record and applicable law, we conclude that some competent credible evidence in the record supported the UCRC's decision, and the decision was neither unlawful nor unreasonable. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** The pertinent facts are taken from the certified transcript that ODJFS filed in the trial court. On July 10, 2020, Beard filed an application with ODJFS seeking unemployment benefits beginning on July 5, 2020. UCRC Transcript ("Tr."), p. 1. Beard's former employer, Deceuninck North America, LLC ("Deceuninck") subsequently indicated to ODJFS that Beard had been employed from March 8, 2020, to July 5, 2020. On the latter date, Beard stopped coming to work and was a "no call," "no show" for two days. Specifically, Beard stopped coming to work without notifying anyone, and he was considered to have quit his employment. *Id.* at, p. 13, 14, 15, and 18.

{¶ 4} On August 18, 2020, ODJFS denied the application for benefits, finding that Beard had quit his employment with Deceuninck without just cause on July 5, 2020. Beard appealed that decision, and the ODJFS Director issued a redetermination on January 29, 2021, disallowing the application. At that point, Beard appealed from the redetermination to the UCRC. ODJFS transferred the file to the UCRC on February 2, 2021.

{¶ 5} A hearing officer then held a telephone hearing on March 10, 2021. Although both sides had been notified of the hearing, only Beard was present. The testimony was somewhat confusing, primarily because Beard contradicted himself at various points.

{¶ 6} During his testimony, Beard said that he had begun his employment at Deceuninck in December 2019 through a staffing agency; Deceuninck then hired him in March 2020. Tr. at p. 85. Beard initially said that he first began having issues with payroll the week of July 10, 2020, when he noticed that he was not being paid for a certain amount of hours. *Id.* at p. 86. Specifically, a holiday (July 4th) fell within the pay period of July 3 through July 10, 2020. *Id.* at p. 87. Beard stated that he was supposed to be paid $27 an hour for the holiday, but did not receive any pay for that day. *Id.*

{¶ 7} Beard also initially said that he addressed this with his supervisor, who told him he would have to make an appointment because human resources personnel were working from home due to the Covid-19 pandemic. *Id.* Beard testified that he tried to call someone (a person named Jamie Miller), but did not receive a response from anyone at Deceuninck until January 28, 2021. *Id.* at p. 88. On that date, Deceuninck

acknowledged in an email that it owed Beard $275.67 for the July 4, 2020 holiday pay. *Id.* at p. 89.

{¶ 8} Beard also initially testified that he quit his employment on July 11 or 12, 2020, since no one from human resources had gotten back to him. *Id.* The date that Beard received the paycheck and realized the error was July 10, 2020. *Id.* According to Beard, he told his supervisor on July 12, 2020, that he did not like the way things were going with the company and that he would walk away since his employer was not giving him its full attention to address a problem. *Id.* at p. 89. Beard also said he went to work that day (on July 12), and that he finished his shift. He said he then received another paycheck on July 17, 2020, which did not contain any errors. *Id.*

{¶ 9} Later in the hearing, Beard realized the above testimony was erroneous and that his last day of work was actually July 5, 2020, rather than July 12. This was because he had stated on his unemployment application that July 5 was his last day of work. Tr. at p. 90 and 92. Beard then claimed the payroll issues had been going on for multiple weeks. *Id.* at p. 90. In this regard, Beard mentioned only one prior incident, which occurred in June 2020. This incident related to the fact that Deceuninck had taken about a month to reimburse Beard for work boots he had purchased, when he was supposed to have received the money in a week. *Id.* at p. 91. However, Beard was paid for the boots in June; payment was just not as timely as he thought it should have been. *Id.* at p. 91 and 94.

{¶ 10} Beard agreed that he had quit because of an issue that had happened in the past. However, this past incident (the reimbursement) had been unrelated to

Deceuninck's alleged failure to pay Beard for his holiday pay on July 4, 2020. This is because Beard had not yet received a paycheck for that date (and did not yet know he had not been paid for July 4th) when he quit his job on July 5, 2020. *Id.* at p. 92.

{¶ 11} Beard was also confused about his work hours and how they related to his paychecks. Contrary to his earlier testimony, Beard realized during the hearing that the wage payment he received on July 17, 2020, was due to the fact that he had been on third shift and had worked into the morning of July 5, 2020. *Id.* at p. 95. Beard also realized that work for July 4th would have been reflected on the pay period for June 28th until July 4 (for which he would have been paid on July 10, 2020), and that his hours on July 5th would have appeared on the July 17, 2020 paycheck. *Id.* at p. 95.

{¶ 12} According to Beard, he told his supervisor at the end of his shift on July 5, 2020, that he was not coming back. *Id.* at p. 93. The reason he gave was "payroll issues." *Id.* The supervisor told Beard that he should contact human resources if he felt there was an issue. However, Beard acknowledged that he did not call human resources until after he had already quit his job. *Id.*

{¶ 13} After hearing the testimony, the hearing officer issued a decision affirming the Director's redetermination and denial of benefits. The hearing officer found that Beard had quit without just cause because he had no unresolved payroll issue when he quit on July 5, 2020. At that point, Beard's reimbursement was complete, and the shortage for the holiday pay was not noticed until after Beard had quit. Tr. at p. 100 (March 26, 2021 Decision).

{¶ 14} After Beard appealed from the Hearing Officer's decision, the UCRC denied

his request for review on April 7, 2021. *Id.* at p. 118-119. Beard then appealed pro se to the trial court on April 15, 2021. ODJFS appeared in the action on April 19, 2021, and filed a certified transcript of the administrative proceedings on May 13, 2021. After the parties filed briefs, the trial court issued a decision affirming UCRC's denial of benefits. Decision, Order, and Entry Affirming Decision of Ohio Department of Job and Family Services (Oct. 14, 2021). Beard then appealed pro se from the trial court's order.

## II. Review of the UCRC Decision

{¶ 15} As noted, Beard did not assert an assignment of error, and we will adopt the framing ODJFS suggested, which mirrors the general standard for reviewing UCRC decisions.

{¶ 16} Under R.C. 4141.282(A), aggrieved parties may appeal decisions of the UCRC to the court of common pleas. The review standard for common pleas courts is outlined in R.C. 4141.282(H), which provides that "[i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."

{¶ 17} The limited review standard in R.C. 4121.282(H) also applies to all appellate courts, including ours. *Young Women's Christian Assn. of Dayton, Ohio, Inc. v. Ohio Dept. of Job & Family Servs.*, 2017-Ohio-4102, 92 N.E.3d 108, ¶ 15 (2d Dist.), citing *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 20. As a result, "a reviewing court may not make factual findings or

determine a witness's credibility and must affirm the commission's finding if some competent, credible evidence in the record supports it. * * * In other words, a reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach different conclusions.' " *Williams* at ¶ 20, quoting *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985). Nonetheless, appellate courts "do have the duty to determine whether the board's decision is supported by the evidence in the record." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995), citing *Irvine* at 18.

{¶ 18} As pertinent here, R.C. 4141.29(D)(2)(a) provides that an applicant may be denied benefits for "the duration of the individual's employment if the director finds that * * * [t]he individual quit work without just cause or has been discharged for just cause in connection with the individual's work." Individuals seeking benefits have the burden of proving "entitlement to unemployment compensation benefits under this statutory provision, including the existence of just cause for quitting work." *Irvine* at 17. "Just cause" traditionally " 'is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Id.*, quoting *Peyton v. Sun T.V.*, 44 Ohio App.2d 10, 12, 335 N.E.2d 751 (10th Dist. 1975).

{¶ 19} In the specific context of unemployment cases, just cause decisions must also comport with the Unemployment Compensation Act's legislative purpose, which is to financially aid persons who have worked and are " 'able and willing to work,' " but who, through no fault of their own, are " 'temporarily without employment.' " *Id.*, quoting *Salzl v. Gibson Greeting Cards, Inc.*, 61 Ohio St.2d 35, 39, 399 N.E.2d 76 (1980). However,

"[t]he Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination." *Tzangas* at 697-698.

{¶ 20} In the case before us, competent, credible evidence existed to support the UCRC's decision, and the decision was not unlawful or unreasonable. Although Beard's testimony before the hearing officer was somewhat confusing (due to Beard's changing explanations), the facts at the hearing indicated that Beard's reimbursement issue with Deceuninck was resolved in June 2020. Subsequently, on July 5, 2020, Beard chose to quit his job before receiving the July 10, 2020 paycheck that he claimed was inaccurate.

{¶ 21} After the hearing officer rejected his claim, Beard offered yet another explanation in his request for further review. Tr. at p. 111. At that point, Beard stated "Employer made mistake on July 3/2020 which ran over to July 10. When asked by commission I was asked when was first time I noticed mistake on my payroll I stated July 10 because payroll was supposed to correct my situation next paycheck. On top of my payroll issue on 7/3/2020 they made mistake on 7/10/20 also please respond." *Id*.

{¶ 22} Although Beard had an opportunity to present testimony to the hearing officer, he mentioned nothing about this alleged mistake during the hearing. Instead, the following exchange occurred:

> Q. When did the issue with payroll start? I guess let's start there.

*When was the first time that you noticed an issue with payroll?*

A. *Uh so my first issue was the week of July 10.*

Q. Okay and what did you notice specifically?

A. Um so I noticed that I wasn't paid for a certain amount of hours, if that makes sense.

Q. Do you know which hours you weren't paid?

A. Um so technically they shorted me * * *.

* * *

A. So I, so it was about 25 hours, something like that with, with holiday pay and things of that nature. * * *

* * *

Q. Okay, so they did not, *on that paycheck then you did not receive the holiday pay for the July 4th holiday*.

A. *Exactly.*

(Emphasis added.) Tr. at p. 86-87.

{¶ 23} Beard quit his job on July 5, 2020, before receiving the July 10, 2020 paycheck. By his own admission, this was his first issue with payroll. Accordingly, the UCRC decision was not unreasonable or unlawful, and it was not against the manifest weight of the evidence. Instead, the conclusion that Beard quit his job without just cause was supported by some competent, credible evidence.

{¶ 24} On appeal, Beard has attached two documents to his brief that were not part of the administrative record. One document appears to be a January 25, 2021 email

from Jamie Miller to Beard regarding a shift differential for which Beard was shorted on July 3, 2020, and for which he was then credited on July 17, 2020. The second document appears to be a January 28, 2021 email from Miller concerning Beard's holiday pay for July 4, 2020. The January 28 email was attached to Beard's reply brief in the trial court, but the January 25 email is not part of either the administrative or trial court record. *Compare* Beard's July 7, 2021 Reply Brief with Beard's February 16, 2022 Court of Appeals' Brief.[1]

{¶ 25} In the trial court, ODJFS asked the court to strike the January 28, 2021 email from the record. *See* ODJFS July 26, 2021 Motion to Strike Exhibit Attached to Appellant's Reply Brief. The trial court did not rule on the motion to strike.

{¶ 26} As a preliminary point, " '[w]hen a trial court fails to rule upon a motion, an appellate court generally will presume the trial court overruled the motion.' " *Dayton Monetary Assocs. v. Becker*, 126 Ohio App.3d 527, 539, 710 N.E.2d 1151 (2d Dist.1998), quoting *Akbar-el v. Muhammed*, 105 Ohio App.3d 81, 85, 663 N.E.2d 703, fn. 2 (4th Dist. 1995). Therefore, we assume the trial court overruled the motion to strike.

{¶ 27} As a further matter, by statute, trial courts "shall hear the appeal on the certified record provided by the commission." R.C. 4141.282(H). Consequently, " 'trial courts are confined to the record certified by the UCRC and do not have 'authority to accept additional evidence.' " *Pennessi v. Hanger Prosthetics & Orthotics, Inc.*, 2d Dist.

---

[1] In this regard, we note ODJFS's assertion that both documents were attached to Beard's trial court reply brief. *See* Appellee's Brief, p. 7. This is incorrect. Only the January 28, 2021 email is part of the trial court record that was transmitted to us. *See* Appellant's Reply Brief. We have also checked the Montgomery County Clerk of Court's online docket, and the January 28, 2021 email is the only document attached to the reply brief that Beard filed in the trial court on July 7, 2021.

Montgomery No. 28022, 2018-Ohio-4631, ¶ 59, quoting *Puterbaugh v. Goodwill Industries of the Miami Valley, Inc.*, 2d Dist. Miami No. 2013-CA-39, 2014-Ohio-2208, ¶ 31. The trial court, therefore, could not consider the January 28, 2021 email.

{¶ 28} On appeal, ODJFS has also asked us to disregard both of the January 2021 emails. Appellee's Brief at p. 7. Like the trial court, we are confined to the certified record, which does not include either email.

{¶ 29} As an additional reason, the general principle is well-settled that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Accordingly, we cannot consider any items attached to Beard's appellate brief.

{¶ 30} As a final point of discussion, we note that Beard's appellate brief mentions page 131 of the certified record and contends that the UCRC should have considered it as evidence that he and Deceuninck had a "situation with payroll." Beard's Court of Appeals' Brief at p. 1.

The document in question is an email that Beard apparently faxed the UCRC on April 7, 2021. This is the last document in the administrative record and is dated the same day that the UCRC mailed its decision disallowing Beard's request for review. Tr. at p. 118-120. There is no indication the UCRC even saw this document before its decision was mailed to Beard.

{¶ 31} The fax does forward an email previously sent to someone at "ucbeninquiry@jfs.ohio.gov," on March 31, 2021. However, there is no indication that

this particular email address belongs to anyone at the UCRC. *Id.* at p. 131. Since Beard was forwarding this email to the UCRC on April 7, 2021, the March 2021 email clearly did not previously reach the UCRC.

{¶ 32} In the March 2021 email, Beard claimed that he was sending a picture of his bank account from July 3, 2020. The "picture" does not contain any identifying information, i.e., account number or owner, or even a bank name. The picture shows a series of purported transactions on July 3, 2020. These transactions show two "DIR DEP" of pay from Deceuninck, one "PAY REVERSAL" from Deceuninck, a "PC CU TRANSFER," and a "CHECKING CASH W/D." *Id.* No amounts are listed for any of these transactions.

{¶ 33} According to Beard's statement in the March 2021 email, he called human resources after he noticed the deposit and reversal, and no response was made to him until January 28, 2021. *Id.* Beard stated in the March 2021 email that "[t]his is why I initially filed for unemployment on 7/5/20 and decided to leave company do [sic] to payroll issues and response time." *Id.* As noted, Beard did not indicate any amounts of the pay that was deposited or reversed. Since only one pay deposit was allegedly reversed, it is possible that Beard was mistakenly paid twice, causing a reversal. However, nothing in the email forwarded to the UCRC sheds any light on these matters.

{¶ 34} Assuming for the sake of argument that the "picture" reflects Beard's bank account, this is yet another inconsistent version of events. First of all, Beard did not file for unemployment on July 5, 2020. He filed on July 10, 2020. Moreover, Beard had previously said that he called human resources *after* he quit his job on July 5, 2020.

Thus, whether human resources timely responded to Beard's call is irrelevant, and even if UCRC had seen Beard's April 7, 2021 fax, there would have been no grounds for allowing Beard's appeal of the hearing officer's decision.

{¶ 35} Finally, even if all of this were otherwise, " 'employees who experience problems in their working conditions must make reasonable efforts to attempt to solve the problem before leaving their employment. Essentially, an employee must notify the employer of the problem and request that it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to have quit without just cause and, therefore will not be entitled to unemployment benefits.' " *Michaels v. KTLA Invests., L.L.C.*, 2d Dist. Montgomery No. 25403, 2013-Ohio-2933, ¶ 16, quoting *DiGiannantoni v. Wedgewater Animal Hosp., Inc.*, 109 Ohio App.3d 300, 307, 671 N.E.2d 1378 (10th Dist.1996). Assuming for the sake of argument that an issue existed, Beard simply quit rather than giving Deceuninck a chance to resolve any problem.

{¶ 36} Based on the preceding discussion, we find no error on the trial court's part or on the part of the UCRC. The UCRC's decision to deny unemployment compensation benefits was not unreasonable or unlawful, and it was supported by some competent, credible evidence. Accordingly, Beard's assignment of error, as framed by ODJFS, is overruled.

III. Conclusion

{¶ 37} Beard's sole assignment of error having been overruled, the judgment of

the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Tyrone A. Beard
Robin A. Jarvis
Hon. Dennis J. Adkins